LOUIS KRUEGER, APPELLANT, *v.* JACOB F. SPEITH, AS SURVIVING PARTNER OF THE LATE FIRM OF SPEITH AND KRUG, RESPONDENT.

PARTNERSHIP — *Surviving partner's control of firm property under sections 229 and 533, division 2, Compiled Statutes — Attachment of firm property in suit against surviving partner.* —The plaintiff brought a suit on certain promissory notes executed by the firm of Speith and Krug, against Speith, the surviving partner (Krug having died), and attached property in his hands belonging to the said firm. The District Court dissolved the attachment on the ground that partnership property in the possession of a surviving member of a firm could not be attached, as it was in the custody of such survivor as a trustee, under the laws of Montana; and also on the ground that the plaintiff, as a creditor, had a lien on said property, capable of being enforced in equity, and therefore could not attach under the provisions of section 181, division 1, Compiled Statutes. *Held,* that under section 229, division 2, Compiled Statutes (which defines the rights and duties of a surviving partner as to firm assets), a surviving member of a copartnership holds the late firm's property *jure proprio ;* and that the only trust which attaches to his possession, is his duty to settle up the affairs of the partnership, and account to the representatives of the deceased partner ; that he is not a personal representative of his deceased partner within the purview of section 533, division 2, Compiled Statutes (defining a personal representative of a decedent); that a creditor of the late firm had no such lien on the firm assets as is contemplated in section 181, division 1, Compiled Statutes (relating to attachment); and that the order dissolving the plaintiff's attachment was erroneous.

Appeal from the *Third Judicial District, Gallatin County.*

The opinion contains the facts.

*Armstrong & Hartman,* for Appellant.

· Is the surviving partner a representative person in the sense contemplated by law, with regard to his duties and privileges. We think not. The trusteeship of the survivor is merely a fiction of law for the purpose of facilitating the settlement of the partnership. Section 533, second division, Complied Statutes, defines a representative person to be "the duly qualified and

acting executor or administrator, or administrator with the will annexed of the estate of the decedent." For other authorities on this question, see *Crane* v. *Gloster*, 13 Nev. 279; 2 Pomeroy's Equity Jurisprudence, § 1046. Again, a trustee is expressly prohibited from purchasing any of the trust property, and yet a surviving partner may purchase the interest of his deceased copartner. (See Comp. Stats. div. 2, § 178.) There is an unbroken line of authorities holding that an attachment will lie. (See Drake on Attachment, 5th ed. § 571; *Knox* v. *Schepler*, 2 Hill [S. C.], 595; *Berry* v. *Harris*, 22 Md. 30; 85 Am. Dec. 639; 2 Wade on Attachment, § 490; Story on Partnership, § 358; 2 Bates on Partnership, § 746; *Barcroft* v. *Snodgrass*, 1 Cold. 430; *Roach* v. *Brannon*, 57 Miss. 490–500.) "When a partnership is dissolved it is not dissolved with regard to things past but only with regard to things future." Death is one means of dissolving a firm, but does not militate against the rights of creditors. (*Andrew's Heirs* v. *Brown*, 21 Ala. 437; 56 Am. Dec. 252; *Murray* v. *Mumford*, 6 Cowen, 442, and cases cited.) The trial judge seemed to labor under the impression that the plaintiff has a lien for the security of his debt, and that his remedy was to enforce that lien, instead of bringing a suit at law to acquire a lien by attachment. The authorities do not bear out that proposition. We think too much stress was placed on the word "lien." The right to sue in an action at law has not been questioned. (See *Nelson* v. *Hill*, 5 How. 133; *Grant* v. *Shurter*, 1 Wend. 148; Story on Partnership, 7th ed. §§ 561, n. 2, 562; *Wilder* v. *Keeler*, 3 Paige, 167; 23 Am Dec. 781.) In fact it has been held, that an action in equity can be maintained, only by alleging the insolvency of the surviving partner and when the property of the estate of the deceased partner is sought. (*Andrews* v. *Sullivan*, 2 Gilm. 327; 43 Am. Dec. 53; *Pearson* v. *Keedy*, 6 Mon. B. 128 ; 43 Am. Dec. 160; *Troy Iron Factory* v. *Winslow*, 11 Blatchf. 513; *Richter* v. *Poppenhausen*, 42 N. Y. 373; *Pope* v. *Cole*, 55 N. Y. 124; 14 Am. Rep. 198; *First Nat. Bank* v. *Morgan*, 73 N. Y. 593; *Voorhis* v. *Childs*, 17 N. Y. 354.) Our statute provides that the surviving partner must settle the affairs of the partnership. (Comp. Stats. div. 2, § 229.) This carries with it the right to sell and dispose of the property and to prefer creditors.

(See *Loeschigk* v. *Hatfield,* 51 N Y. 660; 2 Bates on Partnership, § 732; *Emerson* v. *Senter,* 118 U. S. 3.) What, then, becomes of the security of the creditors or the property upon which the alleged lien is supposed to exist? One reason advanced for dissolving the attachment is, that as neither partner can convey the real estate during the existence of the partnership, *a fortiori,* subsequent to the dissolution, some one must be empowered by law to dispose of it, etc. The answer to that is, that during the existence of the partnership a firm creditor can attach and sell the real estate and the sheriff will convey the interest of one or all of the partners, and the same proceedings may be had and done after the dissolution. The suit must be brought against the survivor, into whose hands the partnership effects pass by survivorship for the payment of the debts. (*Kinsler* v. *McCants,* 4 Rich. 46; 53 Am. Dec. 711; *Wilder* v. *Keeler,* 3 Paige, 167; 23 Am. Dec. 781; 2 Wade on Attachment, § 490.) Suppose the firm was dissolved by limitation or by mutual consent, and one member or both should refuse to convey his interest in the real estate to pay the firm debts, is there no way to subject such interest to the payment of the firm debts? The objection urged to the attachment on the ground that plaintiff is seeking to confer upon himself a lien by operation of law, in addition to the one which he in common with all firm creditors has, would apply with equal force in all cases, whether before dissolution or after. The application of such a doctrine would necessarily deprive all firm creditors of the right of attachment, at all times.

*E. W. Toole,* for Respondent.

The attachment law being general in its nature and application, must give way to the statute especially applicable to the property of estates of copartnerships when in the hands and control of a surviving partner, who is by such statute authorized to administer and settle the partnership business. If the rights of the surviving partner were conferred only at common law, upon universal principles of construction, the statute with reference to attachments would prevail. This would be the case even if our statute had not expressly made it so, by section 201, page 647. If the partnership property in such a case retains its character-

istics as such, and becomes a primary fund in the hands of the survivor for the payment of the partnership debts, and he is charged with the duty of settling the same, it is impressed with a lien or trust, and the survivor under the statute is created a trustee for the purposes of the trust.  (See Comp. Stats. §§ 1294, 1295, p. 1006.)  Aside from this, the duties imposed by the statute upon the survivor are inconsistent with the common-law doctrine announced by appellants, and which must obtain to enable them to maintain their position.  (See Comp. Stats. p. 302, § 120; § 178 p. 319, in connection with § 229, p. 332.) It is by reason of the statutory provisions, as a part of the Probate Practice Act, and not on account of the condition of things that might exist at common law, that section 229, page 332, takes precedence over section 181, page 103, under section 201, page 647.  We submit below the authorities cited in the opinion of Justice Liddell in the District Court in support of the position that the surviving partner acts under our statute in a trust capacity.  (*Freirmuth* v. *Freirmuth*, 46 Cal. 42; *May* v. *Hanson*, 6 Cal. 643; *Allen* v. *Hill*, 16 Cal. 113; *Smith* v. *Walker*, 38 Cal. 389; 99 Am. Dec. 415; *Roberts* v. *Landecker*, 9 Cal. 265; *Porter* v. *Brooks*, 35 Cal. 203; *Hill* v. *Grigsby*, 32 Cal. 59.)  These cases contain discussions interpreting the statutes of California, from which State our statute under discussion has been adopted.  (See, also, *Brooks* v. *Cook*, 8 Mass. 246; *Mock* v. *King*, 15 Ala. 66; *Tremper* v. *Conkling*, 44 N. Y. 58; *Daby* v. *Ericsson*, 45 N. Y. 786.)  And to the effect that under section 181 of our Code (which is similar to the California Code section) there exists such a lien as deprives a creditor of the right to attach, see, also, *Conroy* v. *Woods*, 13 Cal. 626; 73 Am. Dec. 605; *Olson* v. *Morrison*, 29 Mich. 395; *Harmon* v. *Clark*, 13 Gray, 114; *Menagh* v. *Whitwell*, 52 N. Y. 146; 11 Am. Rep. 683.

DE WOLFE, J. — The appellant (plaintiff) brought his action in the District Court against the defendant, as surviving partner of the firm of Speith and Krug, upon four promissory notes made by the firm prior to the death of Charles Krug, one of the members of the firm.

The plaintiff, at the time of bringing his action, also applied for a writ of attachment against the property of the defendant,

and filed the affidavit and undertaking required by law, which were approved by the clerk, and an attachment issued against the property of the defendant. The record is silent as to what property was attached under the writ; but from the subsequent proceedings, we infer that it was levied upon property in the hands of the defendant as surviving partner.

A motion was made to discharge this attachment, on the following grounds: *First.* There is no law of this Territory authorizing the issuing or levying of an attachment against a representative person. *Second.* This court has not yet acquired jurisdiction of the subject-matter of this action.

The motion was heard and decided by the judge at chambers, and an order made dissolving the attachment, upon the first ground stated in the motion. An appeal was taken from the order of the judge, and the only question presented by the record is, the correctness of this order.

The question is an important one, affecting, as it does, the rights of creditors, the rights of a surviving partner, and the rights of the heirs and representatives of a deceased partner; and we will try and give the questions involved the consideration which their importance demands.

The learned judge, who dissolved the attachment in the case, based his decision on two grounds: *First,* because a surviving partner holds partnership property as a trustee, and in pursuance of a statute which vests him with the possession, for the sole purpose of settling up the business of the partnership and accounting for the residue to the heirs or representatives of the deceased partner, an attachment against the property will prevent the due execution of this trust; *second,* because the creditor of the partnership has a lien on partnership property, which can be enforced in equity, and under the law of this Territory, an attachment does not lie when a lien exists. The principle is undoubtedly correct, that upon the death of a partner, the survivor or survivors become in a certain sense trustees of a partnership property, and become liable for its misapplication.

Judge Story, in his treatise on Partnership, thus defines the duties and liabilities of a surviving partner: "The survivors are entitled to close up the affairs of the firm, to collect and adjust the debts due it, and to pay its debts and discharge its liabilities.

They are also bound to apply the partnership property to the like purposes, with reasonable diligence; and if they are negligent in the discharge of their duties in these particulars, a court of equity will interfere, and upon the application of the representatives of the deceased partner, appoint a receiver, and wind up the affairs of the firm." (Story on Partnership, § 328.) Chancellor Kent lays down like principles in the following language: "A community of interest (after the death of a partner) still exists between the representatives of the deceased partner and the survivor, and these representatives have the right to insist on the application of the joint property to the payment of the joint debts and a due distribution of the surplus. So long as these objects remain to be accomplished, the partnership may be considered as having a limited continuance. If the survivor does not account in a reasonable time, a court of chancery will grant an injunction to restrain him from acting, and will appoint a receiver, and direct an account to be taken." (3 Kent Com. p. 57.) Again, on page 63, the learned author, in speaking of the powers and duties of a surviving partner, says: "On the dissolution by death, the surviving partner settles the affairs of the concern, and a court of chancery will not wrest the business from him and appoint a receiver unless confidence be destroyed by his mismanagement or improper conduct. The surviving partner is alone suable at law; and he is entitled to the possession and disposition of the assets, to enable him to discharge the debts and settle the concern." Many other authorities could be adduced in support of these well-settled principles; but it is not deemed necessary to refer to them, as our own statute is but an affirmance of the common-law principle.

Section 229 of the Probate Practice Act, which is the one defining these rights and duties, is as follows: "When a partnership exists between the decedent, at the time of his death, and any other person, the surviving partner has the right to continue in possession of the partnership, and to settle its business, but the interest of the decedent in the partnership must be included in the inventory, and be appraised and appropriated as other property. The surviving partner must settle the affairs of the partnership without delay, and account with the executor or administrator, and pay over such balances as may from time to time be

payable to him in right of the decedent.   Upon the application
of the executor or administrator, the probate judge may, when-
ever it appears necessary, order the surviving partner to render
an account, and in case of neglect or refusal may, after notice,
compel it by attachment, and the executor or administrator may
maintain against him any action which the decedent could have
maintained." Undoubtedly, under this provision, a surviving
partner is a trustee or *quasi* trustee of the interest which the
deceased partner had in the partnership property at the time of
his death ; and as such, is liable to account therefor, to the
administrator or personal representatives of the deceased partner.
Strictly speaking, a surviving partner could hardly be termed a
trustee of the copartnership, as that ceased to exist on the death
of one of its members.

In *Willliams* v. *Whedon*, 109 N. Y. 333, the court held that
a surviving partner did not hold partnership property as a
trustee, but held by virtue of his own rights as survivor.   In
the case of *Knox* v. *Gye*, 5 Law R. H. L. C. 656, the court,
speaking by Lord Westbury, says : "Another source of error is
the looseness with which the word 'trustee' is frequently used.
The surviving partner is often called a trustee, but the term is
used inaccurately ; he is not a trustee either expressly or by
implication.   On the death of a partner the law confers on his
representatives certain rights as against the surviving partner,
and imposes on the latter corresponding obligations.   The sur-
viving partner may be called, so far as these obligations extend,
a trustee for the deceased partner ; but when these obligations
have been fulfilled, or are discharged, or terminate by law, the
supposed trust is at end. . . . . There is nothing fiduciary
between the surviving partner and the dead partner's representa-
tive, except that they may respectively sue each other in equity.
There are certain legal rights and duties which attach to them,
but it is a mistake to apply the word 'trust' to the legal relation
thereby created."   The same doctrine is thus stated in Bates on
Partnership, volume 2, section 718 : "The surviving partner is
in law the owner of the chattel property as well as the choses in
action.   The representatives of the deceased partner have a right
to the balance that will be found to belong to the decedent ; they
also have a right to compel the surviving partner to apply the

assets to the debts, and not to waste it or delay settlement. This is obviously not a tenancy in common, even in equitable contemplation; and though the representatives of the deceased have been called *cestuis que trustent,* and the survivor a trustee for them, this doctrine is at most but partially true, and is distinctly repudiated by some great courts." (See, also, *Bush* v. *Clark,* 127 Mass. 111.)

In *Theller* v. *Such,* 57 Cal. 447, in construing a statute like ours, the court says: "The Probate Court has no more jurisdiction to provide for a partnership account and decree a balance where a partnership has been dissolved by the *death* of a partner, than when it has been dissolved by any other cause." The assets which pass to the executor or administrator consist of the individual estate of the deceased; partnership assets, as such, form no part of such individual estate. The residuum only, after satisfying liabilities and advances, if any, made by the survivor, becomes the property of the estate. (So, also, *Andrade* v. *Superior Court of San Francisco,* 75 Cal. 459.)

If it was otherwise, immediately on the death of one of the members of a partnership, the partnership estate would be *in custodia legis,* and would have to be administered and settled like any private or individual estate. Our statute does not contemplate a proceeding like this, and while it requires the inventory to include the interest of the decedent in a partnership, it also gives to the surviving partner full power over the partnership estate and property for the purpose of settling and accounting, and subjects him to legal proceedings, only when he fails to perform his duty within a reasonable time. He gives no bond such as is required to be given by an administrator, nor do accounts against the partnership require the formal proofs or allowance which the law requires in the case of claims against an estate. None of the requirements with which the law surrounds an administrator are required of a surviving partner in the settlement of a partnership estate, but all such matters are left to the judgment and presumed knowledge of the surviving partner, and his acts, if done in good faith, bind alike his own and the interest of the representatives of the deceased partner in the partnership property. (Story on Partnership, § 328.)

The authorities to which we have referred, settle the question,

that it is only in a qualified sense that a surviving partner is a trustee of the representatives of a deceased partner. He takes, or rather retains the partnership property, *jure proprio;* and the only trust which attaches to his possession and disposition of the property is his duty to settle up the affairs of the partnership and account to the representatives of the deceased partner, a duty, as we have seen, which he may be compelled to perform if he neglects or unreasonably defers. If not a trustee in an exact sense, is a surviving partner a personal representative of a deceased partner? A personal representative is defined in section 533 of the Probate Practice Act as follows: "The personal representative of the decedent . . . . is the duly qualified and acting executor or administrator, or administrator with the will annexed, of the estate of the decedent." This language cannot, by any just construction, include a surviving partner. In *Crane* v. *Gloster,* 13 Nev. 279, it was held directly, that he was not a personal representative; and such, we think, is the only construction which the section properly bears.

The order dissolving the attachment is also based on the further ground, that the attaching creditor had a lien upon the partnership property of the firm, and under the statute relating to attachments, an attachment did not lie, or could not issue, if the creditor had a lien. Section 181 of the Code of Civil Procedure, as far as it relates to liens, is as follows: "No writ of attachment shall be issued until the plaintiff, his agent or attorney, shall file with the clerk an affidavit, showing that the defendant is indebted to the plaintiff, upon a contract, express or implied, for the payment of money, gold dust, or other property then due, which is not secured by a mortgage, lien, or pledge upon real or personal property, or is so secured that the security has become insufficient by the act of the defendant, or by any means has become nugatory." The word "lien" is used here with the words "mortgage" and "pledge." All these words, while having a different legal signification, are somewhat analogous, and the use of them in connection, and in the same sentence, serves to explain their meaning, and the sense in which they were intended in the act. Bouvier defines the word "lien" as follows: "In its most extensive signification, this term includes every case in which real or personal property is

charged with the payment of any debt or duty, every such charge being denominated a lien on the property. In a more limited sense it is defined to be a right of detaining the property of another until some claim be satisfied." Doubtless the word is more comprehensive than either a mortgage or a pledge; it includes these, as it does all similar obligations by which specific property may be subjected to the payment of a particular debt. That this is what was intended by the legislature in passing the act is manifest from the last sentence of the section referred to, in which it, in substance, says that if the security has become insufficient by act of defendant or other cause, attachment may issue. It is obvious that the lien here contemplated was a lien on specific property, which subjected it to the payment of the debt.

In one sense every creditor has a lien on the entire property of his debtor (not exempt from execution). He may sue his debtor, and when he obtains judgment, may subject his property to the payment of the judgment; and this, or something like it, was evidently what the court had in view when holding that a creditor of a partnership had a lien on partnership property as security for his debt. The court, in its opinion, refers to Story on Partnership, sections 360 and 361, as upholding a lien on partnership property for firm creditors. Both of these sections referred to, deny that a creditor as such has any lien upon the partnership property, but both sections lay down the principle that upon a dissolution of the partnership "the partners themselves have a lien upon the partnership effects for the discharge of all the debts and obligations thereof; and that lien may, in many cases, be made available for the benefit of creditors. But then the equities of the creditors must be worked out through the medium of that of the partners. They (the creditors) have indeed no lien, but, as has been said, they have something approaching to a lien, of which, with the assent of the partners entitled to the lien, they may avail themselves in a court of equity against the partnership effects. . . . . It is thus, through the operation of administering the equities between the partners themselves, that the creditors have the opportunity of enforcing this *quasi* lien." (§ 360.) Again, in section 361, the author says: "It is only in cases where there is a dissolution by the

death or bankruptcy of one partner, that the right of joint creditors can attach as a *quasi* lien upon the partnership effects, as a derivative, subordinate right under and through the lien and equity of the partners." (§ 361.) A lien, from its very nature, takes hold of the property and retains it for the satisfaction of the debt; not so with the lien of a creditor of a partnership on the property of the firm. While the partnership continues, the partners, or any of them acting for the partnership or firm, may sell and dispose of the property. They may assign, mortgage, or alienate it, and if the property passes out of the possession or ownership of the partnership, the lien which the partners had is lost with the ownership of the property, and with it is lost the *quasi* lien, or derivative right or equity of a creditor, to subject the property to the payment of the partnership debts.

In *Case* v. *Beauregard*, 99 U. S. 119, two of three members of a partnership sold, and by separate assignments transferred their interests in the partnership property to private creditors. The interest so assigned was a second time sold and assigned to other parties. The last assignee and the third member of the original firm transferred their interest in the firm property and formed a new partnership. Upon a suit by a creditor to subject the property of the last firm to the payment of the debts of the original firm, the court held that it could not be done, as the property had passed out of the ownership and control of the first firm, although one of its members had an interest in the second partnership. From the authorities above (and many others might be added), we think the plaintiff in this action had no lien which deprived him of the right to an attachment against the partnership property as security for any judgment he might obtain. Drake, in his work on Attachment, section 571, says: "When the partnership has been dissolved by the death of one or more partners, leaving one survivor, it is considered that, as the sole surviving partner is in law the owner of all the partnership effects, a debt due to the late partnership may be attached in an action against the survivor."

This is what was done in the present case, and from every view we have been able to take of the law, we think that the court erred in sustaining the motion to discharge the attachment.

The order discharging it is therefore reversed, and the cause

remanded, with directions to vacate the order and overrule the motion to discharge the attachment.

Order reversed and cause remanded.

*Judgment reversed.*

McCONNELL, C. J.. and BACH. J., concur.