## BURCHINELL v. KOON.

8   463
12    72
s25c  60

1. PARTNERSHIP—MORTGAGE BY SURVIVOR.

The surviving partner of an insolvent firm has power to execute a mortgage upon the firm assets to secure the payment of a firm debt.

2. SAME.

A surviving partner is not to be regarded in an action at law as a trustee for the benefit of firm creditors.

3. ASSIGNMENT FOR THE BENEFIT OF CREDITORS—MORTGAGE.

A mortgage, although upon the whole stock of the mortgagor, may not be construed to be a general assignment for the benefit of creditors, when the instrument is not in that form and such was not the evident intent of the parties.

4. EVIDENCE.

The plaintiff, in an action to recover for the conversion of a stock of goods, to prove the value thereof called an expert, who testified that he went through the stock, examined each package and item and called off the description and value of the goods to another witness, who, when produced, testified that he wrote in a book the items as called off and recorded them accurately with the prices which were then given to him. The book which contained the items thus written down was offered in evidence. *Held*, admissible for the purpose of showing the extent and character of the various items recorded.

5. ACTION BY MORTGAGEE—DAMAGES.

A mortgagee in possession of chattels may maintain an action for their value against an officer who illegally seizes and converts them.

6. IMMATERIAL ERROR.

Errors which have not affected the substantial rights of the parties do not suffice as a basis for reversal.

*Appeal from the District Court of Arapahoe County.*

Mr. T. J. O'DONNELL, Mr. W. S. DECKER, Mr. MILTON SMITH and Messrs. ROGERS, CUTHBERT & ELLIS, for appellant.

Mr. R. D. THOMPSON and Mr. B. B. LINDSEY, for appellee.

BISSELL, J., delivered the opinion of the court.

The only inquiry of any considerable difficulty suggested

by this record respects the right of the surviving partner of an insolvent firm to execute a mortgage to secure the payment of a firm debt.

It is presented on this state of facts: For some years prior to 1891, A. B. and F. W. Jefferay did business as a firm both in Kansas and in Colorado. While in Kansas their business was of a banking character, but in Colorado, to which they removed prior to 1891, they were carrying on business as merchants and dealers in furnishing goods. This firm first started in that line in Pueblo, where in November, 1891, one of the brothers, A. B., died. F. W. continued the business as before, and under the same general firm designation, and removed to Denver in the summer of 1893. The original loan which was made by Mrs. Koon, the sister of the members of the firm, amounted to $1,800. Later, and in July, 1893, about the time of the panic, she loaned the survivor the farther sum of $600. The two loans with the accumulated interest amounted, on the 31st day of July, 1893, to $2,575, for which sum F. W. Jefferay, as surviving partner of the firm, gave a note, promising to pay that sum to Mrs. Koon on demand with interest at the rate named. To secure the payment of this note F. W. executed a chattel mortgage on the stock and delivered it to his sister. Mrs. Koon thereupon took possession of the stock and proceeded to close it out through her agents. It was seized by the appellant, Burchinell, as sheriff, under divers writs of attachment issued in favor of various creditors of the firm. The sheriff took the goods out of the mortgagee's possession, removed them for sale, and applied the proceeds to the satisfaction of the attaching creditor's claims. Mrs. Koon then brought suit for the conversion, alleging the value and praying judgment. The sheriff took issue on the complaint, set up the indebtedness to the attaching creditors; the issuance and levy of the writs; the subsequent confirmation of the attachments by the judgment, and attacked the mortgage by allegations of fraud; contested the value of the goods as laid, and insisted on the trial that the mortgage was without

validity because of the want of power in the surviving part-
ner to execute the security.

The powers of a surviving partner to deal with the firm
assets have been established by a long line of adjudications.
His right to sell, mortgage, and dispose of those assets and
apply them according to his own discretion and judgment in
the payment of debts has been repeatedly recognized.   *Wil-
liams et al. v. Whedon*, 109 N. Y. 333 ; *Fitzpatrick v. Flanna-
gan*, 106 U. S. 648 ; *Emerson v. Senter et al.*, 118 U. S. 3 ;
*Durant v. Pierson*, 124 N. Y. 444 ; *Patton v. Leftwich et al.*,
86 Va. 421 ; *Nat. Bank of Peru v. Parsons*, 128 Ind. 147 ;
*Krueger v. Speith*, 8 Mont. 482 ; *Roach v. Brannon*, 57 Miss.
490 ; *Smith v. Phelan et al.*, 40 Neb. 765 ; *Johnson et al. v.
Berlizheimer*, 84 Ill. 54.

According to the doctrine of all these authorities, and there
are practically none to the contrary, the surviving partner is
entitled to the possession and control of the joint property of
the firm for the purpose of winding up the affairs of the
copartnership.   To accomplish this end he has a right, ac-
cording to the settled principles of the law of partnership, to
administer the firm affairs and to dispose of its assets.   This
power is broad enough to cover the right of sale and includes
the power to mortgage, or to deliver property in payment.
No limit seems to be put on the power of the partner, except
that he is required to devote the assets to the liquidation of
outstanding obligations.   Some of the cases go so far as to
hold that if he devotes those assets to the payment of his
individual debts, it is not a matter of which the general
creditors can complain; that where the transaction is com-
pleted it cannot be impeached by subsequent proceedings.
We express no opinion on this matter.   This illustrates the
tendency of the decisions.   The specific question of the power
to mortgage has arisen in many cases.   Where it has been
exercised in good faith, it has been universally upheld.   We
thus experience no difficulty in deciding that the surviving
partner had full power to execute this mortgage, and that

thereby Mrs. Koon acquired a valid lien, which could not be divested by the levy of the attachment writs.

It has been sometimes held, and has been frequently stated by both judges and text writers, that the surviving partner is a trustee for the benefit of the firm creditors, and that he holds the assets in trust for the payment of firm debts. This is sometimes measurably true. There are cases where creditors have reduced their debts to judgment and come into equity for the purpose of compelling a specific application of the assets. The courts have then enforced the equities of the partnership creditors as against those having claims only on the individual members of the firm. The great trouble, however, is that the surviving partner is in no exact sense a trustee. This matter received very elaborate consideration in a somewhat recent case in the house of lords (*Knox v. Gye*, 5 Law Reports, E. & I. App. Cases, 656), wherein Lord Westbury, in a very felicitous way, analyzed the use of the word "trustee," and, as we view it, properly defined and limited it. The distinguished jurist said: "Another source of error in this matter is the looseness in which the word 'trustee' is frequently used. The surviving partner is often called a 'trustee,' but the term is used inaccurately. He is not a trustee, either expressly or by implication. On the death of a partner the law confers on his representative certain rights as against the surviving partner, and imposes upon the latter correspondent obligations. The surviving partner may be called, so far as these obligations extend, a trustee for the deceased partner; but when these obligations have been fulfilled, or are discharged, or terminated by law, the supposed trust is at an end. The advantage of correcting by familiar practice an inaccurate use of a word, although that use may be found in treatises of reputation, I remember to have seen singularly illustrated in a case that occurred some years ago in a court of law, where the court of law was told that in an agreement for the sale of a house the vendor was trustee for the purchaser, and the judges were called upon to apply a rule which is quite right as between a complete trus-

tee by declaration and the *cestui que trust*, but quite wrong when the vendor is called a trustee only by a metaphor, and by an improper use of the term ; and it required some trouble to convince them that though the vendor might be called a trustee, he was a trustee only to the extent of his obligation to perform the agreement between himself and the purchaser. * * * The application to a man who is improperly, and by metaphor only, called a trustee, of all the consequences which would follow if he were a trustee by express declaration—in other words a complete trustee—holding the property exclusively for the benefit of the *cestui que trust*, well illustrates the remark made by Lord Mansfield, that nothing in law is so apt to mislead as a metaphor."

It has therefore many times happened that the rules laid down in cases where courts of equity have seized upon the firm assets to distribute them according to the rights of the creditors and debtors, or where estates have come into. courts to be wound up by proceedings analogous to those in bankruptcy jurisdictions, the courts have treated the surviving partner as a trustee, and have administered the estate according to the equitable rights of the parties.    The rule has not been applied in cases where the surviving partner has undertaken, in the exercise of his power as survivor, to apply the assets to the liquidation of debts, nor have payments been successfully attacked by a creditor who has put his claim into judgment and come into a court to compel a different distribution of the firm funds after the rights of other persons have been fixed and settled by the acts of the parties. We therefore have no hesitation in holding that the surviving partner had the right, as was plainly declared in one of the cases cited, to mortgage these assets for the payment of this debt.    We do not regard the case as at all affected by the fact that a portion of the fund represented by the note was advanced to the survivor after the death of the other member of the firm.    The money went into the general firm account, was for the benefit of the estate as controlled by the survivor, and was applied to the liquidation of outstand-

ing firm obligations. The principle was undoubtedly recognized in the *Durant Case*, cited *supra*. The only difficulty we have had with the case at all in this aspect of it proceeds from a decision of the supreme court which is relied on by the appellant. *Salsbury v. Ellison*, 7 Colo. 167.

We do not undertake to differ with that case, and upon the same facts, and under the same conditions, we should undoubtedly follow it as the law of the state, for we have no disposition to either criticise or disagree with it. That distinguished court holds a survivor may not execute a general assignment for the benefit of creditors. That is the law of this jurisdiction, and we should unhesitatingly follow it if in this case the survivor had made such an assignment. It is also true that the learned writer of the opinion calls the surviving partner a trustee without expressing the limitations which are undoubtedly essential when a different case is presented. Used in a general way it is unobjectionable, but as in the argument of counsel it is open to misconstruction. In *Sickman et al. v. Abernathy et al.*, 14 Colo. 174, the learned court substantially stated the doctrine as we have now expressed it. Therein the rule was approved which permits the surviving partner to control and dispose of the firm assets. What is said in the *Abernathy Case* seems to us to be entirely germane to the question then under consideration, and the analysis of the learned commissioner and the citations from the authorities are relevant to the matter at issue, and in no sense *obiter*, as contended.

We have thus disposed of practically the only question involved. There are many other subordinate matters called to our attention which we will briefly touch upon, that it may not be said they have escaped our notice. That the mortgage covered the whole stock owned by the firm does not permit us to call it a general assignment, nor treat it as such for the purpose of this litigation. This was the rule that prevailed in the federal courts for a long time. It has been settled by an authoritative decision of the supreme court of the United States. *Union Bank of Chicago v. Kan-*

*sas City Bank*, 136 U. S. 223. This court, following in the same line, squarely adjudged that a mortgage may not be construed to be a general assignment for the benefit of creditors, when the instrument is not in that form, and such was not the evident intention of ·the parties. *McCord-Bragdon Co. v. Garrison*, 5 Colo. App. 60.

It is likewise insisted the matter is controlled by statute. We do not understand the statute to operate as a limitation on the powers of the survivor. This has been a matter of direct adjudication in other states. *Havens & Geddis Co. v. Harris*, 140 Ind. 387.

During the progress of the trial, the plaintiff introduced proof tending to show the extent, character and value of the property which had been taken by the sheriff. She produced witnesses whose evidence, taken together and summarized in the book which was produced, tended in that direction. By the method pursued, an expert was called, who testified substantially that he went through the stock of goods and examined each package and item where the package was broken, and the packages as a whole where they were in entirety, and called off the description and the value of the goods to another witness, who, when produced, testified that he wrote in the book the items as called off and recorded them accurately with the prices which were then given to him. The book which contained the items thus written down by the two witnesses was offered in evidence, and the appellant objected to the proof. It seems to us entirely satisfactory. While the book itself was not perhaps strictly evidence, it was legitimately introduced for the purpose of showing the extent and character of the various items recorded. There is no other method by which a stock can be taken, and by which parties can testify and intelligently lay before the jury a description of the goods, of the amounts and of the values. Few men can retain in their memory and state item by item a stock of goods which they have examined, even though the purpose of the examination was to ascertain the value of it. The present practice has been

approved by a court accustomed to deal with commercial questions. *Howard et al. v. McDonough et al.*, 77 N. Y. 592.

The status of the parties with respect to the property is a corollary from the establishment of the main proposition. The plaintiff was a mortgagee who had taken possession by virtue of a valid instrument. Under the decisions of our supreme court the attaching creditors could not interfere with this possession, and when they proceeded illegally to take the goods the mortgagee could maintain an action to recover the value. *Metzler v. James*, 12 Colo. 322; *Stevenson v. Lord*, 15 Colo. 131.

This disposes of all the matters except the appellant's contention that the instructions are irreconcilable and inconsistent. We do not intend to enter into a discussion of this matter, nor defend the trial court and establish by illustration and argument the accuracy of its statement to the jury. It is undoubtedly true the jury were told the plaintiff would be entirely unaffected by any fraudulent purpose entertained by the survivor, if she was without knowledge of it and took her mortgage in good faith and to secure a then existing *bona fide* indebtedness. The jury were subsequently told there was no proof in the case which tended to establish a direct fraud on the part of the surviving partner. The instructions may seem inconsistent, but even if this should be conceded, which we do not admit, it is an inconsistency which does not compel us to disturb the verdict. The last instruction is undoubtedly correct as applied to this record. There was no evidence of an intent to defraud; the declarations which the surviving partner made were not inconsistent with his subsequent conduct, nor with the exact situation, and we are of the opinion the defendant failed to produce any evidence which tended to show the surviving partner was guilty of active or passive fraud with reference to his vendors or his other creditors. The other instructions were of themselves accurate statements of the law, and even if they were to a certain extent inapplicable, this does not constitute error which compels us to disturb the verdict. Errors which have

not affected the substantial rights of the parties do not suffice as a basis of reversal. So far as we are able to see, substantial justice was done between the parties; the plaintiff was entitled to the judgment which she obtained, and since the conclusion of the trial court is in accord with these views, its judgment will be affirmed.

*Affirmed.*