Cunningham, Judge.
Appellee, as plaintiff below, brought his action in ejectment in the district court, alleging that he was the owner in fee simple and entitled to the immediate possession of some twenty quarter sections .of land situated in said county. Plaintiff further .alleged “that the defendant wrongfully withholds the possession of the said premises from this plaintiff, *586 and wrongfully and unlawfully continues to exercise acts of ownership thereover, and claims to own the same.” By the prayer of his complaint plaintiff asked that he be adjudged the owner in fee of the said land, and entitled to the immediate possession thereof; that he be let into possession of said lands as against the defendant, and all persons claiming 'or to claim by, from or under it; for his costs and all other proper relief. The defendant company answered, denying each and every allegation of the complaint, and for a second defense admitted that it was in possession of the several tracts of land; alleged that it was the owner thereof under deeds severally conveying to the defendant the said several tracts of land; that the defendant, having claim and color of title adverse to the plaintiff, made in good faith, had paid the taxes thereon for seven successive years; that no other person or persons had paid any taxes on said land during the aforesaid period; that the land was vacant and unoccupied during all of said period. In its prayer the defendant demanded judgment that it is the .owner of the said several tracts of land and entitled to the possession thereof.
1. Plaintiff’s claim of title to a large number of the tracts of land involved was based upon a trustee’s deed executed by a trustee named in a second deed of trust, the owner of said land having given two trust deeds at or about the same time on these tracts of land. There was evidence introduced on the trial showing that the plaintiff was the owner and in possession of all of the notes which the first trust deeds were given to secure, and that he had the same in court, together with the trust deeds securing the same. Appellant contends that the second trust *587 deeds being given subject to the trust deeds preceding them could convey nothing more than an equity of redemption, since the first trust deeds conveyed the whole legal title; hence, it contends that the trustee’s deeds resulting from the foreclosure of the second trust deeds could convey no more than an equity of redemption, and therefore, the legal title of the land was not in the plaintiff, and his action must fail since he alleged in his complaint that he was the owner in fee simple. In other words, appellant contends that there was a fatal variance between the.pleadings and the proof. It is not seriously contended by defendant that the plaintiff might not have recovered in an action of this sort, had he plead and proven an equitable title. But, inasmuch as he plead fee simple title and proved equitable ownership only, defendant insists he must go out of court. In this connection the defendant complains also of the findings and decree of the court adjudging the plaintiff to be the owner in fee simple of the land. It is further contended by the appellant that nothing but possession was involved in this case, and the decree ought not to have gone beyond the determination of that single question. Both by the prayer of the complaint, and the prayer of the answer, it will be seen that each of the parties to the action sought to have the question of title determined by the court. The defendant’s title was predicated entirely upon tax deeds. If these tax deeds were sufficient, they constituted, paramount title,’and the case must be reversed; if they were void, then the decree of the court adjudging the plaintiff to be the owner in fee simple of the land is not prejudicial to appellant, even granting that the language of the decree goes *588 beyond wliat the evidence warrants, and it cannot bind or affect one not a party to the action. Should a judgment, if otherwise just and regular, be set aside because the plaintiff alleged title in fee, and on the trial proved equitable title! The answer must, we apprehend, depend upon the nature of the action and the substantial rights of the defendant. The legislative and judicial branches of our state government have frequently declared against reversing the decrees of trial courts for errors not affecting the substantial rights of the losing party. The following are a few of the many cases so holding: Salazar v. Taylor, 18 Colo. 547; Miller v. Williams, 27 Colo. 39; Doland v. Grand Valley Ir. Co., 28 Colo. 154; Geiger v. Kiser, 47 Colo. 301; Coe v. Waters, 7 Colo. App. 207-9; Burchinell v. Koon, 8 Colo. App. 470; Roberts v. Handasyde, 21 Colo. App. 450; 122 Pac. 60; Denver City Tram. Co. v. Armstrong, No. 3302; 21 C. A. 640.
In the case of Coe v. Waters, supra, in an able opinion on petition for rehearing, the late Judge Bissell, who wrote the opinion, speaking of variance, uses this language:
“Doubtless if the defendant had been surprised by the testimony and a totally different case had been made from that which he was called upon to answer, he would have been entitled to a continuance. He might likewise, perhaps, in the present instance, have compelled an amendment to the complaint so as to have presented a legally accurate statement of the plaintiff’s action. Taking no steps in either one of these directions, we do not regard the question of variance as so saved in the record as to call for a specific judgment respecting it. While we concede *589 tlie complaint is not so drafted as to present witli technical accuracy the cause of action, it was according to the verdict of the jury sustained by the proof. It did contain all the allegations requisite to the plaintiff’s recovery.”
2. The appellant based its claim of title to the land in question on two certain correction tax deeds issued by the treasurer of Washington County. There are certain serious, if not fatal, defects in the original tax deeds, and it is reasonable to suppose that the two correction deeds were issued for the purpose of meeting or correcting these' defects. It is not necessary in the view we take of the correction deeds to consider the defects in the original deeds. Nor is it necessary for us to determine whether the treasurer of Washington County was authorized to issue said correction deeds. The first correction deed relied upon (being Exhibit 3) contains, among other things, the following recitations, omitting unnecessary portions:
“Know all men by these presents, that whereas the following described real property (here describing a portion of the property involved in this action) situate in the county of Washington, state of Colorado, was subject to taxes for the year A. I). 1895 * * and whereas the treasurer of said county did by virtue of the authority vested in him by law, at a tax sale, the sale publicly held on the 19th day of October, A. D. 1896, severally expose at public sale at the office of the county treasurer in the county aforesaid, in substantial conformity with the requirements of the statute in such case made and provided, each tract of said property for the payment of taxes, etc. * * * and whereas no bid *590 was made or offered by any person at said sale for any of the land . * * * offered, to sale and remaining unsold at said sale, and particularly for the said above described real property, or any part of it, and said treas— lie became satisfied that no more sale of any property and particularly the real property herein specifically described, so offered, could be effected at public sale, thereupon said treasurer did bid off at said sale for and in the name of said county of Washington, all the lands,” etc.
There is a portion of a line appearing in the exhibit offered as a copy of said correction deed, reading as follows: “having passed such real property over for the time, did re-offer it until on the last day of the sale.” which has been erased, or through which a line is drawn. From the aboveoit conclusively appears that the land in question was bid in by the county on the first day that the same was offered for sale. It follows, therefore, that this correction deed was void on its face, and under repeated rulings of our supreme court.
The second correction deed relied on (being exhibit 20) embraced the remaining portion of the land involved in this action. This deed contained the-following recitals:
“Know all men by these presents, that whereas, the following described real property, to wit: (describing a certain portion of the land involved in this action) were subject to taxation for the year A. D. .1895 in the said former county of Arapahoe, and whereas the taxes separately assessed upon said real estate for the year aforesaid remained due and unpaid. at the date of the sale hereinafter named; and whereas the treasurer of said county did on the 31st *591 clay of October, A. D. 1896, by virtue of the authority vested in him by law, at an adjourned sale, the sale begun and publicly held on the 5th day- of October, 1896, severally expose to public sale * * * in substantial conformity with the requirements of the statute * * * the said several parcels of real property above described * * * and whereas, no bid was made or offered by any person at said sale for any of the land or portion thereof offered and exposed to sale and remaining unsold at said sale * * * the treasurer having passed such real property for the time, did offer and re-offer for sale from day to day until the 31st day of October, being the last day of the sale,” when, as appears, the treasurer bid the same off for the county. -It is clear that this property was not offered for sale until the 31st day of October, whereas the sale, it appears, had begun on the 5th day of October. The deed says that “the treasurer of said county did on the 31st day of October, A. D. 1896,” do certain things. And those certain things appear from the recitals following to be to expose or offer the property for sale and striking it off to the county. If the treasurer had also exposed or offered it for sale on any day between the 5th day of October, when the sale was begun, and the 31st day of October, the day when the sale was made, it would have so recited in the deed. See Bryant v. Miller, 48 Colo. 194.
It is true that the deed recites that the treasurer passed the property and did offer and re-offer it for sale from day to day until the 31st day of October, but if he offered it for the first time on the 31st day of October, he could not have passed it from day to day, and this recitation is manifest^ untrue. If he *592 offered it on days previous to October 31st, it would have been an easy matter to have recited on what days it was so offered. It is said in Charlton v. Toomey, 7 Colo. App. 304, that every preliminary step required to divest the owner of title must affirmatively appear in the recitals of the tax deed to have been regularly taken as required by law. It is also said in the same case that when the property has been reached on the tax sale: “It must be offered, and if no outside bid is made it must be offered on the next, and each succeeding day until the close of the sale. * * * After being’ first offered it must be continuously offered from day to day until the sale is concluded; all efforts to affect a sale must be exhausted; and the treasurer can exercise no previous discretion; and the county can only become a purchaser of the entire tract in default of an outside bidder, after an opportunity had been offered each day. ’ ’
While, as we have said before, the deed does recite that the treasurer “did offer and re-offer it (meaning the land) for sale from day to day until the 31st day of October, being the last day of the sale,” it nowhere appears when he first offered the land, or on what day or days he offered it, unless, as we construe the recitals of the deed, it was offered on the 31st day of October, being the last day of the sale, and the day the land was sold. In other words, the land was offered, for the first time, and sold, on October 3.1st, the last day of the sale, or else we have no information whatever as to how many times the land was offered for sale or on what days it had been previously offered for sale. Hence, we have no basis for determining whether the treasurer acted arbi *593 trarily and whether his satisfaction that no more bids could be obtained for the land was reasonable or otherwise. In the Charlton-Toomey case, supra, it is said: “It is true that the section contains the following: ‘ Or until the treasurer shall become satisfied that no more sale can be affected’. But this must be so construed as to harmonize with the balance of the section, otherwise it would invest the treasurer with an arbitrary discretion that he might exercise at any time in contravention of the balance of the section.”
This deed is substantially, if not precisely, the same in form as the one before us in the case of Empire Ranch & Cattle Co. v. Howell, No. 3406, decided by this court recently, and which we held to be void on its face.
We think clearly that under the rule laid down in Bryant v. Miller, supra, and Charlton v. Toomey, supra, this deed is void on its face for the reasons already pointed out. Hence, it is not necessary to consider other alleged defects therein.
3. Appellant further insists that even if the' tax deeds under which its claim of title to the land in controversy is made be void on their face, still it has title by virtue of compliance with Section 4090 B. S. This contention is ably and elaborately presented by counsel for appellants in their briefs, certain phases of the statute of limitations being discussed which we do not find it necessary to consider or pass upon. The-record shows that the tax deeds upon which appellant relies had not been of record seven years at the time appellee instituted his action. In Sayre v. Sage, 47 Colo, 568, our supreme court ruled:
*594 “As it appears the defendant was not in possession of the lode mining claim in controversy for the period of seven years between the date his tax deed was filed for record and the commencement of the action ag’ainst him,” [and such is the situation in the case under consideration] “and that five years had not elapsed after his tax deed was recorded before plaintiff instituted the suit * * * neither of the sections relating to limitations was available as a defense.”
In the Sayre case all the various statutes of limitation applicable to real property had been plead and relied upon by the defendant. Therefore, under the authority of the Sayre case, assuming, but not deciding, that the seven-year statute of limitations was properly plead'by the defendant in the case at bar,’ still it was not available as a defense.
The judgment of the trial court is affirmed.

Affirmed.

Supplemental opinion filed Oct. 14, 1912.