53   31
124a 449

ESTHER FARR, as Administratrix, etc., of ASA FARR, Deceased, Respondent, v. CHARLES MORRILL, Appellant.

*Partnership, when it exists — agreement under which one party contributes a patent-right and the other the money to manufacture the patented article — right of the latter to continue the business after the death of the former.*

One Morrill, having invented new and important improvements in saw-sets, in December, 1879, entered into an agreement with Asa Farr, reciting that a patent had been allowed for the improvements, and that he was desirous of having saw-sets made in sufficient quantities to keep the market fully supplied at all times, and thereby assigned, in consideration of one dollar paid to him by Farr,

and for other considerations therein specified, one undivided half of all his rights, title and interest in and to the said patent, and also for all improvements that were already made, or might be made, by him in said saw-sets.

Farr agreed to furnish funds necessary to take out patents and for the manufacturing of the said saw-sets in sufficient quantities to keep the market fully supplied, and to keep a correct account of all receipts and disbursements. It was further agreed that neither party should have the independent right to make, manufacture or dispose, in any way or manner, of any right, title or interest in the said improvements in saw-sets without the written consent of the other, and that the net profits should be divided between them, share and share alike.

After the execution of this agreement the parties entered upon its performance and the business was carried on until the death of Farr, in July, 1885, upon which event Morrill took possession and control of the business, and prosecuted and carried on the same, and received the profits and income thereof, and refused to acknowledge that Farr's administratrix had any right or interest in the said business.

In an action, brought by Farr's administratrix, to compel an accounting upon the part of the defendant for the business thus done since the death of Farr:

*Held*, that it was the intention of the parties to enter upon a joint adventure, Morrill having his patents and Farr having the money.

That, although the assignment was made of an undivided one-half interest, it was not intended to make the parties tenants in common in the patents in the ordinary acceptation of the term, but it was clearly intended to be a contribution by Morrill of his patents to the business, precisely the same as Farr was to contribute his time and money to the business.

That, upon the death of Farr, the partnership was dissolved and the surviving partner held the assets of the firm, as a trustee, for the purpose of liquidation; that his duty was to liquidate the affairs of the partnership, settle its obligations, sell its assets and divide the proceeds.

That the use of such assets, in the continuation of the business by the surviving partner, constituted a breach of trust and a misappropriation of such property, and that the personal representative of the deceased partner had a right to call him to an accounting and compel a liquidation of the business and sale of its assets.

*Hooley* v. *Gieve* (9 Daly, 104; affirmed, 82 N. Y., 625) followed.

APPEAL from an interlocutory judgment recovered at the New York Special Term, which was entered in the office of the clerk of the city and county of New York on the 1st day of November, 1888, determining the rights of the parties and ordering the defendant to account.

*J. E. Parsons,* for the appellant.

*W. C. Beecher,* for the respondent.

Van Brunt, P. J.:

This action was brought to compel an accounting upon the part of the defendant for the business done in the manufacture and sale of certain patented articles since the death of one Asa Farr, of whom the plaintiff had been appointed administratrix. The defendant denied the right to an account, and the court below held that there was a copartnership between said Farr and the defendant, and gave judgment for the accounting, and from such judgment this appeal is taken.

The facts which it is necessary to consider in the determination of this appeal seem to be undisputed, and they are that, in December, 1879, the defendant was the inventor of new and important improvements in saw-sets, and at that time entered into an agreement with Asa Farr, now deceased, by which agreement it is recited that Charles Morrill had invented new and valuable improvements in an instrument called a saw-set, for which a patent was allowed by the United States and on which further improvements had been made, and for which additional patents were to be applied for, and that he was desirous of having said saw-sets made in sufficient quantities to keep the market fully supplied at all times; therefore, in consideration of one dollar paid to him by Farr, and for other agreements in said agreement specified, he assigned to Farr one undivided half of all his rights, title and interest in and to said patent, and, also, for all improvements that were already made or might be made by him in said saw-sets and for which patents were to be applied for. Farr agreed to furnish the funds necessary to take out patents and for the manufacturing of said saw-sets in sufficient quantities to keep the market fully supplied, and to keep a correct account of all receipts and disbursements, and to attend to the business, of which a statement was to be made out whenever the defendant required. The defendant agreed to travel and introduce said saw-sets to mechanics and to the trade, during which time he was to have the privilege of drawing fifteen dollars a week in addition to his expenses. It was further agreed that neither party should have the independent right to make, manufacture or dispose of, in any way or manner, of any right, title or interest in said improvements in saw-sets without the written consent of the other. And it is further agreed

that the net profits should be divided between them, share and share alike.

After the execution of that agreement the parties entered upon its performance, and Farr carried out and performed the terms and conditions of the agreement by him to be carried out until his death in July, 1885. Upon the death of Farr, Morrill took possession and control of the business and prosecuted and carried on the same and received the profits and income thereof, and continued to do so until the appointment of a receiver in this action. For a time the defendant paid certain profits to the plaintiff, but finally refused to acknowledge any right or interest of the plaintiff in said business. The main questions involved are : Did Farr and the defendant become partners by reason of the agreement mentioned ? And what were their rights and interests in the patents under which the business was carried on ? It is undoubtedly true that the nature of property in patents is peculiar, and that the assignment of an undivided half interest in a patent gives simply an equal right to manufacture, and a right to one-half of the damages for infringements, and that such an assignment does not make the joint owners partners, but they are treated as tenants in common, unless there are some distinguishable features in the transaction which show that it was intended that different rights should be conferred. It appears, from the recitals of the agreement, that Morrill was the owner of these patents, and that he was desirous of having goods manufactured thereunder, and it is to be inferred that he had not the capital so to do, and for that reason he entered into the arrangement with Farr, whereby Farr was to furnish all the funds necessary, not only to take out the patents, but for the manufacture of the saw-sets in sufficient quantities to keep the markets supplied. In other words, it was the intention of the parties to enter upon a joint adventure, Morrill having his patents and Farr apparently having the money. Now, for the purpose of carrying out this adventure, the agreement referred to was made, in and by which the defendant assigned one-half of all his right, title and interest in the patents to Farr. If there had been nothing else in this agreement, it might be very well held, under the rule adverted to, that Farr and Morrill held these patents as tenants in common, and that each had an equal right to manufacture and sell thereunder. But by the very terms of the agreement

itself it is provided that neither party to this agreement shall have the independent right to make, manufacture or cause to be made or manufactured or to dispose in any way or manner of any right or title or interest in the within named improvements in saw-sets without the written consent of the other; taking away the right which each one of them would have had to manufacture or sell independent of the other.

It is, therefore, clear that it was the intention of these parties that the manufacture under these patents was to be carried on for their joint benefit, and although this assignment was made of an undivided one-half interest, yet it was not intended to make the parties tenants in common, in the ordinary acceptation of the term, in the patents, but that it was clearly intended to be a contribution of these patents to the business by Morrill, precisely the same as Farr was to contribute his time and his money to the business.

This, it seems to us, is the necessary conclusion upon reading this instrument and upon considering the purposes which evidently were to be attained; and then they were to divide the profits equally. It is true that nothing was said about the losses. Probably it was not thought there would be any losses in the business, and it does not appear that there have been; but that they were to share equally in the joint adventure, participating in the profits, is apparent, and that they, therefore, became partners as between themselves as well as to all the world. This being the condition of affairs, the result was upon the death of Farr that the partnership was dissolved and the surviving partner held the assets of the firm as a trustee for the purpose of liquidation. His duty was to liquidate the property, settle its obligations, sell its assets and divide the proceeds. The use of such assets in the continuation of the business by the surviving partner constitutes a breach of trust and a misappropriation of such property; and the personal representatives of the deceased partner had a right to call him to an account and to compel a liquidation of the business and a sale of its assets. These principles are distinctly laid down in the case of *Hooley* v. *Gieve* (9 Daly, 104), affirmed by the Court of Appeals in 82 New York, 625, upon the opinion of the court below.

It seems to us that the learned judge who tried the cause in the court below was clearly right in holding that the relations between

the parties to this agreement were those of copartners, and, also, in holding that, under the peculiar circumstances of the agreement constituting the partnership and the assignment of the interest in these patents, they became assets of the firm and were to be treated as such.

Undoubtedly the death of Mr. Farr dissolved the copartnership. Not only would this be the ordinary rule, but it was evident that his personal attention to the business was part and parcel of the consideration for the entering into the copartnership, and it could not be continued against the wish of the defendant after his death and after he was deprived of such personal assistance as it was intended that Farr should give; but he having continued the business made himself liable to an accounting for all the profits of the business during the time that he continued it; and this is the relief which the court below gave, and to this the representatives of the deceased partner were clearly entitled.

The judgment appealed from should be affirmed, with costs.

BRADY and BARTLETT, JJ., concurred.

Judgment affirmed, with costs.