Smith v. Phelan.

M. E. SMITH ET AL. V. E. J. PHELAN ET AL.

FILED JUNE 5, 1894.    NO. 5139.

1. **Voluntary Assignments**: CHATTEL MORTGAGES. Where several chattel mortgages are made and delivered simultaneously, covering all the property of the mortgagor, to secure different creditors, leaving other creditors unsecured, such transaction does not constitute a voluntary assignment for the benefit of creditors, although there may have been an agreement among the mortgagees to share *pro rata* in the proceeds of the mortgaged property.

2. **Replevin**: CHATTEL MORTGAGES: EVIDENCE. In an action of replevin, where the plaintiff claims possession under a chattel mortgage, it is error to admit evidence tending to prove mere irregularities in the foreclosure of the mortgage by the plaintiff subsequent to the commencement of the action.

3. **Fraudulent Conveyances**: EXCESSIVE SECURITY. Where the value of property mortgaged largely exceeds the amount of the debt secured thereby, such fact is a badge of fraud as against creditors; but the question of fraud is one of fact to be addressed to the jury, and not of law.

4. **Replevin**: PLEADING AND PROOF: REVIEW. Where the plaintiff in replevin alleges an absolute ownership, and the evidence, received without objection, proves a special ownership through a chattel mortgage, the defense successfully interposed being that said mortgage was fraudulent as to creditors, the defendant cannot afterward, in proceedings by petition in error in this court, assert that there is a fatal variance between the petition and the proofs.

ERROR from the district court of Greeley county. Tried below before COFFIN, J.

*Bartlett, Crane & Baldrige* and *Paul & Templin,* for plaintiffs in error.

*J. R. Hanna* and *T. J. Doyle, contra.*

Post, J.

This was an action of replevin in the district court of
Greeley county by the plaintiffs in error against the de-
fendant in error to recover possession of a stock of goods
claimed by the former under a chattel mortgage executed
by F. H. Farnsworth and D. R. Pomeroy in the firm
name of Farnsworth & Pomeroy. Verdict was returned
in favor of the defendant, and judgment having been en-
tered thereon, the case was removed to this court for re-
view upon the petition in error of the plaintiffs.

For several years previous to the month of July, 1890,
Farnsworth & Pomeroy were engaged in business as gen-
eral merchants in Greeley county. During said period
they became indebted to various wholesale dealers for
merchandise, and in the month named such indebtedness
amounted to the sum of $3,217. In addition to which
they were indebted to the Mead Investment Company in
the sum of $2,100. On the 12th day of June said partners,
being unable to meet their obligation, without consulting
plaintiffs, executed in favor of the latter a mortgage upon
their entire stock of goods and other personal property,
together with certain real estate in Greeley county, to se-
cure four notes of $2,000 each, maturing respectively Jan-
uary 1, 1891, July 1, 1891, January 1, 1892, and July 1,
1892. Said mortgage was placed on file by the makers on
the 2d day of July, and the plaintiffs, being notified of
such fact, immediately repudiated the transaction and re-
fused to accept said notes or mortgage. The next day
plaintiffs' representative visited Farnsworth & Pomeroy
and procured the execution of the mortgage through which
they claim in this action, to-wit, for $1,607.22 and cover-
ing the stock of goods in controversy. At the same time
Farnsworth & Pomeroy executed mortgages on the same
property to McCord, Brady & Co., Dewey & Stone, Gil-
more & Ruhl, C. M. Henderson & Co., and S. A. Or-

chard, in amounts ranging from $59.75 to $606.59, and amounting in the aggregate to $1,610.48. Said mortgages were given priority in the order named, it being stipulated that each in its order was subject to those preceding it, and all subject to the mortgage of the plaintiffs. Plaintiffs took immediate possession under their mortgage, and, with the consent of the mortgagors, were proceeding to dispose of the property at private sale, when it was taken from them by the defendant herein, as sheriff, by virtue of an order of attachment in an action in which the Mead Investment Company was plaintiff and Farnsworth & Pomeroy were defendants. This action was then instituted by the plaintiffs, and the property having been delivered to them, was advertised and sold in bulk, the plaintiffs becoming the purchasers for the amount of their claim. Shortly thereafter plaintiffs sold the stock to H. H. Farnsworth, a relative of the mortgagor of that name, for the sum of $2,000. Of that sum, $676 was retained by the plaintiffs, being the amount of their original claim less the proceeds of sales previously made by them, and the balance distributed among the other mortgagees according to priority. The grounds upon which the mortgage of plaintiffs is assailed sufficiently appear from the following instructions given at the request of the defendant, to which exception was duly taken.

"1. If you find from the evidence that the mortgage upon which plaintiff claims title to the property in controversy included all the property of the mortgagors at the time it was given, and at or about the time of its execution other mortgages were executed to divers creditors with the understanding and agreement that M. E. Smith & Co. were to take possession of the property and from the proceeds thereof pay said secured creditors *pro rata,* and at said time the mortgagors, Farnsworth & Pomeroy, were indebted to defendant in the sum of $2,100 and made no provision for securing or paying said debt, then, and in that event,

said arrangement would be in the nature of an assignment and void, and plaintiff cannot recover.

"2. If you find that the action was not commenced until after sale of property under mortgage, then you are instructed a notice to foreclose a chattel mortgage is made by advertisement published in some newspaper in the county in which such sale is to take place, and in case no newspapers are printed therein, by posting up notices in at least five public places in said county, two of which shall be in the precinct where the mortgaged property is to be offered for sale, and such notices shall be given at least twenty days prior to the day of sale.

"3. When a mortgagee delivers notice of foreclosure of a chattel mortgage to a publisher of a newspaper, said mortgagee makes such publisher of such newspaper his agent for the purpose of publishing such notice, and is bound by the act of said publisher in so far as they relate to the publication of such notice."

In giving the above instructions the learned district judge evidently followed the case of *Bonns v. Carter*, 20 Neb., 566; but that case was overruled in *Jones v. Loree*, 37 Neb., 816. In the last named case it was held that where several chattel mortgages are made and delivered simultaneously to secure different creditors, the delivery being to the one of the mortgagees who acts for the others as well as himself, such transaction does not constitute an assignment for the benefit of creditors and is not void for that reason as to creditors of the mortgagor; and substantially the same doctrine was announced in *Hershiser v. Higman*, 31 Neb., 531, and *Hamilton v. Isaacs*, 34 Neb., 709. Since the instruction given is in direct conflict with the cases cited, it follows that the giving thereof was error, for which the judgment of the district court must be reversed.

2. The giving of instructions 2 and 3 was also error. The rights of the parties herein depend upon the question who was entitled to possession of the property at the time

of the commencement of the action, and not upon the proceedings subsequently taken by the plaintiffs in the foreclosure of the mortgage. Unless there has been a substantial compliance with the essentials to a valid foreclosure, the plaintiffs may, in a proper proceeding, be required to account to non-consenting creditors for the value of the property less the amount of their claim. (*Rockford Watch Co. v. Manifold*, 36 Neb., 802.) But that question is not involved in this controversy.

3. It is also urged that the mortgage of plaintiffs is void for the reason that the security largely exceeds the amount of the debt; but, as we have seen, the execution of the several mortgages was practically one transaction, said mortgages amounted in the aggregate to $3,217.70, and the value of the property, according to defendant's evidence, did not exceed $3,631.12. The disparity between the value of the property and the amount of the indebtedness is not so great as to raise a presumption of fraud in the transaction. A careful examination of the cases bearing upon the subject will show the doctrine of this court to be that the taking of security greatly in excess of the debt secured is a badge of fraud only. Cases may arise where the disparity between the debt and the security is so great as of itself to warrant the inference of fraud; but the question is ordinarily one of fact to be addressed to the jury, and not one of law for the court.

4. Lastly, it is contended that there was a fatal variance between the allegations of the petition and the proofs. The basis of this claim is the fact that in their petition the plaintiffs alleged an absolute ownership of the property, while their reliance is upon a special interest through their mortgage; but by reference to the record we observe that the objection is made for the first time in this court. The mortgage was received in evidence without objection by the defendant, who tendered the issue of fraud and evidently recovered upon that ground. He should not now

53

be permitted to contend that that issue was not presented by the pleadings. It is an established rule of this court that parties will be restricted to the theory upon which cases are prosecuted and defended in the trial court. (*Smith v. Spaulding*, 40 Neb., 339.) The judgment is reversed and the cause remanded for further proceedings in the district court.

REVERSED AND REMANDED.