PEOPLE'S NATIONAL BANK OF JACKSON *v.* WILCOX.

JACKSON CITY BANK *v.* SAME.

1. WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED OFFI-
CER OF CORPORATION.
   A suit by a bank to foreclose a mortgage, brought against the
   mortgagor alone, was heard in connection with a suit by an-
   other corporation against the mortgagor and the bank to post-
   pone the mortgage to complainant's execution levy.  *Held,*
   that, under 3 Comp. Laws, § 10212, neither the mortgagor nor
   the managing officer of the execution creditor could testify
   to conversations with a deceased officer of the bank, not in
   the presence of any surviving officer, having a tendency to
   impair the validity of the mortgage.

2. PARTNERSHIP—MORTGAGES—AUTHORITY OF SURVIVING PART-
NER—EXECUTION—PRIORITY OF LIENS.
   Where a mortgage is executed in good faith by a surviving
   partner as such and individually on partnership property to
   secure the payment of money borrowed to meet the obliga-
   tions of the partnership, the mortgagee is entitled to a first
   lien on such property to satisfy his debt, as against a creditor
   of the firm whose execution was levied after the making of
   the mortgage.

Cross-appeals from Saginaw; Snow, J.   Submitted De-
cember 16, 1903.   (Docket No. 217.)   Decided May 23,
1904.

Bill by the People's National Bank of Jackson against
Homer Wilcox and Stanley Wilcox to foreclose a mort-

gage; and by the Jackson City Bank against Homer Wilcox and the People's National Bank of Jackson to set aside or postpone the operation of said mortgage. The causes were heard together, and, from the decree rendered, the two banks appeal. Modified.

*T. E. Barkworth*, for People's National Bank.

*Pringle & Hewett*, for Jackson City Bank.

*Wilson & Cobb*, for defendants Wilcox.

MOORE, C. J. The bill in the first entitled cause was filed for the purpose of foreclosing a mortgage made April 23, 1898, by Homer Wilcox, as surviving partner of the firm of A. & H. Wilcox, and also in his individual capacity, to complainant in said cause. The bill in the second entitled cause is filed by complainant as an execution creditor of Homer Wilcox, individually and as surviving partner, for the purpose of setting aside or postponing the operation of said mortgage. By stipulation the cases were heard as one. From the decree entered in the case both complainants have appealed. No relief is asked against Stanley Wilcox. Homer Wilcox did not appeal.

The mortgage was made "between Homer Wilcox, as surviving partner of the firm of A. & H. Wilcox, a copartnership, and in his individual capacity, under and by virtue of a certain deed heretofore executed by the members of said copartnership and their wives, of the first part, and People's National Bank of Jackson, Michigan, of the second part," and continued this recital:

"Provided always, and these presents are upon this express condition, that if the said party of the first part shall and do well and truly pay or cause to be paid to the said party of the second part the sum of $20,562.35, as evidenced by certain promissory notes now in the possession of the party of the second part, to pay the said sum of $20,562.35 as provided in said promissory notes so held to secure the same, and to which these presents are collateral, or as may be hereafter provided in any note or notes given

in renewal thereof, then these presents shall cease and be null and void."

The mortgage was signed, "Homer Wilcox [L. S.] and as surviving partner of the firm of A. & H. Wilcox [L. S.]."

The deed referred to in the mortgage named Homer Wilcox as the manager of the firm of A. & H. Wilcox, and gave him power to make deeds and other papers. It also provided for the settlement of the business of the partnership upon its dissolution by notice from one partner to the other of his desire to terminate it,—

"And, in case of such notice from either partner to the other, said Homer Wilcox shall proceed to close said partnership as follows, to wit: He, said Homer Wilcox, shall, after said notice, make no more purchases of real estate, and no more of personal property than, in his judgment, is required in connection with realty, and shall, within one year after such notice, sell in the customary manner of said partnership, or in such way as his judgment approves, all personal property of said partnership known as stock in trade, whether of lumber, lime, or any stock being dealt in, and shall also, within a period of six years, sell all personal property not known as stock in trade as above mentioned, excepting real-estate mortgages, which may be sold or not, at the discretion of said Homer Wilcox; and the said Homer Wilcox shall, from partnership funds or with partnership property, pay all debts, and shall then divide the net proceeds or remainder between himself and said Andrews Wilcox in proportion of ownership as before herein indicated; and, to effect sales of real estate and settlement of partnership business, he, said Homer Wilcox, may, at his discretion, mortgage partnership real estate, and then sell subject to mortgage, or may sell real estate for payment down in part and take time mortgage for the balance; and, in making a division in closing the partnership, mortgages then held shall be divided as nearly as practical in proportion to ownership, and mortgages divided shall be properly assigned in form for legal record vesting individual title.

"And it is further agreed and hereby established that the death of either of said partners shall constitute and be the same as notice of wish to close said partnership, and,

in case of such death of either, the surviving partner shall proceed to close and end said partnership in the manner as hereinbefore set forth."

Andrews Wilcox died in December, 1891. The following notes were in the possession of the bank at the time the mortgage was made: One for $7,246.20, dated January 1, 1898, signed "Stanley Wilcox," indorsed and guaranteed by Homer Wilcox; one dated January 1, 1898, for $603.62, signed "Homer Wilcox;" one dated January 1, 1898, for $10,000, signed by Homer Wilcox; one for $729.96, dated January 24, 1898, signed by Homer Wilcox; and one dated April 20, 1898, for $1,566.70, signed by Homer Wilcox.

At the time the mortgage was given, there was a mortgage of $900 upon one of the descriptions of land included in it. This mortgage was foreclosed, and, at the time the decree was rendered, the mortgage lien had been acquired by the Jackson City Bank. The trial judge held that this mortgage lien should be the first lien on the property described therein. He also found that, though the mortgage was given for upwards of $20,000, only $5,640 of it was the debt of A. & H. Wilcox to the bank, and held that amount should be a lien prior to the lien the Jackson City Bank obtained by reason of its execution levy. The People's National Bank claims the decree should have been for the full amount of the mortgage. The Jackson City Bank claims no decree should have been rendered in favor of the People's National Bank, for the reason that the debt of A. & H. Wilcox had been released and paid by accepting the notes of Homer Wilcox. It also claims there was embraced in the mortgage a large amount of the personal debt of Homer Wilcox, which vitiates the entire mortgage, and, in any event, claims its lien by reason of its execution levy should have priority over the lien of the People's National Bank. Homer Wilcox claims he is liable as maker and guarantor of the notes individually, and not as surviving partner, and that partnership assets cannot be appropriated to their payment. He also claims that, at

the time the mortgage was given, an oral arrangement was made of things the bank was to do in consideration of the giving of the mortgage, which agreement was to be put in writing, but was not, because the president of the bank, Mr. Root, sickened and died before it was done; and, as the bank did not carry out the arrangement, the mortgage did not take effect, or, if it did, an allowance for damages should be made because of the failure of the bank to carry out its agreement.

Before considering the main question, disposition should be made of two preliminary questions. Homer Wilcox was allowed to testify as to the conversation he had with Mr. Root, the president of the People's National Bank, at the time the mortgage was made, which conversation tended to show that the entire agreement was not put in the mortgage, but was to be put into a separate paper. All the other officers of the bank testified they never heard of such a claim until long after the death of Mr. Root. Mr. Potter, the vice-president of the Jackson City Bank, also gave testimony of a conversation with Mr. Root, which tended to show that the debt of A. & H. Wilcox had been released by accepting paper made by H. Wilcox in the place thereof. Objection was made to the reception of the testimony of Mr. Wilcox and Mr. Potter. It is claimed that, as to the controversy between the two banks, Wilcox, though a nominal party, was neither prosecuting nor defending, and hence might properly testify; that, as the Jackson City Bank was not a party to the foreclosure suit, there is no reason why Mr. Potter might not testify in that suit; and if, for any purpose in either suit, Mr. Potter or Mr. Wilcox was a competent witness, his testimony could not be disregarded.

The statute under construction is section 10212, 3 Comp. Laws. In *Penny* v. *Croul*, 87 Mich. 15 (49 N. W. 311, 13 L. R. A. 83), it was said the statute was intended to reach the real party in interest, and that a witness is not permitted to testify in his own interest as against one whose lips are closed in death. In *McHugh* v. *Dowd's*.

*Estate*, 86 Mich. 412 (49 N. W. 216), it is said the statute was designed to protect the estates of deceased persons against claims which depend, in whole or in part, upon testimony of a party which cannot be refuted by the testimony of the deceased. The statute is also intended to protect the interests of corporations when the testimony relates to matters within the knowledge of a deceased officer of a corporation. Apply these principles to the case at bar. In this case it is proposed to do away with the effect of the mortgage made by Homer Wilcox as survivor of A. & H. Wilcox by showing conversations with Mr. Root, when, if that result could be accomplished, it would affect the interests of the bank of which Mr. Potter is manager, and the interests of Homer Wilcox. We do not think the testimony was competent. See, also, *Seymour* v. *Wallace*, 121 Mich. 402 (80 N. W. 242); *Berry* v. *Adams*, 122 Mich. 17 (80 N. W. 792).

A great many questions are raised in the voluminous briefs of able counsel, which, in our view of the case, it is not necessary to discuss. There are a few facts about which there is no dispute:

*First.* The property described in the mortgage was partnership property belonging to A. & H. Wilcox.

*Second.* The affairs of that partnership had not been closed.

*Third.* The mortgage was made by Mr. Wilcox as surviving partner as well as an individual.

*Fourth.* That, as to $16,000 of the debt, it was originally money the bank furnished to and which was used by the firm of A. & H. Wilcox before the death of Andrews Wilcox, $10,000 of which was represented by the note of the firm, and $6,000 by the note of Stanley Wilcox indorsed by the firm.

*Fifth.* Whatever may have been the fact about the bank having accepted the notes of Homer Wilcox in the place of the firm, the firm itself had never paid this debt.

In addition to this, we think it clearly appears that the balance which entered into this mortgage was for money furnished Homer Wilcox by the bank, and used by him for the benefit of the partnership.

In addition to the recitals of the mortgage, Mr. Wilcox left with the bank a paper reading in part as follows:

"HOMER WILCOX,

"Office.

"JACKSON, MICH., April 25, 1898.

"On April 23d, 1898, I, Homer Wilcox, as surviving partner of A. & H. Wilcox, conveyed to People's National Bank, Jackson, by real-estate and chattel mortgages, for the purpose of securing to said bank payments of twenty thousand five hundred sixty-two and thirty-five one-hundredths dollars, and seven per cent. interest thereon, which said sum said bank had from time to time advanced for the use and benefit of said A. & H. Wilcox, commencing such advances a considerable period prior to the death of Andrews Wilcox, one of the partners of said A. & H. Wilcox, and continuing such advances to meet the necessities of A. & H. Wilcox and of Homer Wilcox, as surviving partner, the following lands and property, to wit."

On the trial Mr. Wilcox testified he put a large amount, approximating $40,000, of his own money into the partnership business. We think there can be no doubt, from reading this record, that, when this mortgage was given, both the bank and Mr. Wilcox believed it was given upon partnership property for the purpose of paying debts for which the partnership was liable, which belief was justified by the facts. The question then arises whether the surviving partner had a right to use the partnership assets to pay the partnership debts under the circumstances disclosed by this record.

In *Barry* v. *Briggs*, 22 Mich. 201, Justice CAMPBELL, speaking for the court, said:

"As sole surviving partner he had the entire legal title to all the assets. He had the right to dispose of them as he pleased, to settle all debts to or against the concern, to make any compromises deemed necessary, and to turn the assets into an available and distributable form. His duty was to act honestly, and to use reasonable discretion and diligence."

In *Pfeffer* v. *Steiner*, 27 Mich. 537, Justice CHRISTIANCY, speaking for the court, said:

"However this may be after the partnership business has been settled and its debts fully paid, and when the representatives have been let into joint possession by the surviving partner, we think it very clear that, until the partnership has been thus settled and all the debts paid, the representatives of the deceased partner have but an equitable interest in such property, which, though in equity it may make them tenants in common, subject to the debts of the firm and a final settlement, does not constitute them tenants in common at law; and until such settlement and payment of all debts, at least, they have no right of possession, and the right of action at law for any trespass upon or injury to the property is vested solely in the surviving partner."

In *Merritt* v. *Dickey*, 38 Mich. 41, Justice CAMPBELL, again speaking for the court, said:

"The law has always been settled in this State that real property which actually was designed to be, and which was in fact treated during the existence of the firm as, partnership assets, must be so regarded in equity, and the legal estate must be held by the heirs of a deceased partner as trustees for the equitable purposes of the firm.

\*    \*    \*

"The facts admitted in the present case show very clearly that the sale of the land and appurtenances was necessary to close up the partnership business, and a court of equity would have been bound to interfere and enforce the disposition at the instance of the survivor, who would unquestionably have been entitled to possess and apply the assets. The interest sold in the present case was not the possible interest of Gage's estate, but the legal interest, which the heirs only held in trust. We can see no reason why the simpler method of disposing of the land in probate, instead of in chancery, can make any difference in the equitable result. If any one but Green had purchased the property, the proceeds would have been subject to his right of management. Being bid off in his name, he has simply become as to the land what he would have become as to the proceeds if it had been sold to a *bona fide* purchaser,—a trustee for the common interest of the partnership as surviving partner, and liable to account for its honest management.

"It would be unjust and inequitable to hold the administrator liable for not going through the form of re-

ceiving and refunding the same money. Gage's estate and his heirs are entitled to nothing beyond such residuum as may be found due by the surviving partner when he has fairly closed the concern. That business belongs to him, and not to the administrator. The latter may be bound to inquire into the conduct of the survivor, and protect the estate from mismanagement if any should appear. But he cannot interfere with the partnership assets while they are in their proper custody."

In *Bassett* v. *Miller*, 39 Mich. 133, Justice CAMPBELL, again speaking for the court, said:

"This case presents, as we think, but one important question, and that is whether surviving partners who sell goods which belong to their firm can recover for their price in their own names, without joining the representatives of the deceased partner. The principle is well settled that the entire legal estate vests in the survivors; and no one else can be regarded as having any legal interest in the assets. *Barry* v. *Briggs*, 22 Mich. 201; *Pfeffer* v. *Steiner*, 27 Mich. 537; *Merritt* v. *Dickey*, 38 Mich. 41."

In *Van Kleeck* v. *McCabe*, 87 Mich. 599 (49 N. W. 872, 24 Am. St. Rep. 182), Justice GRANT, speaking for the court, said:

"If, therefore, the partnership actually existed between John and Albert, the title to the property belonging to it still remained in the firm, and upon the death of John the title thereto became vested in Albert as the surviving partner. In all matters connected with the partnership he was the proper party to sue and to be sued. If a partner, it became his duty to close up the partnership matters, collect the assets, pay the debts, and then distribute the fund. Until the partnership fund is ready for distribution, the representatives of the deceased partner have no right to interfere, so long as the surviving partner is proceeding in good faith to wind up its affairs. *Barry* v. *Briggs*, 22 Mich. 201; *Pfeffer* v. *Steiner*, 27 Mich. 537; *Merritt* v. *Dickey*, 38 Mich. 41; *Bassett* v. *Miller*, 39 Mich. 133."

In *Kipp* v. *McChesney*, 66 Ill. 460, a member of a partnership had purchased a partnership note, and indorsed it to another, who sued the copartnership. The court, in disposing of the case, said:

"One copartner may deal as an individual with his firm. He may invest his private means in the purchase of partnership securities, as well as any other description of securities, and we do not perceive why he should not be allowed to hold them as valid obligations, without their being accounted as paid or extinguished by his act of purchase of them. We think the court below was warranted by the evidence in finding that there was a purchase of the note by Davison, and not a payment of it. While the note remained in the hands of Davison as assignee, he could not have enforced its payment by suit at law, for the reason that he could not have sued himself as maker. A party cannot be both plaintiff and defendant in an action at law, and the other nine makers of the note were not liable without Davison. But this is a difficulty attending the remedy only, not the right; and, when the note is indorsed to one against whom there is no such objection, the difficulty ceases to exist, and such third person may maintain an action upon the note. *Heywood* v. *Wingate*, 14 N. H. 73; *Pitcher* v. *Barrows*, 17 Pick. 361 (28 Am. Dec. 306); *Thayer* v. *Buffum*, 11 Metc. 398; *Davis* v. *Briggs*, 39 Me. 304; *Smith* v. *Lusher*, 5 Cow. 688."

In *Haynes* v. *Brooks*, 8 Civ. Proc. R. 106, it was said:

"It is, however, claimed by the plaintiffs that Brown & Co., who are preferred, are creditors of the assignor individually. They are, however, called by the assignor, and are treated as, copartnership creditors. The debt of these creditors originated in a loan of money made by them to the surviving partner to pay an accommodation note loaned to the firm itself. If a firm obligation was retired by the use of the money loaned or advanced by Brown & Co., the surviving partner would have been entitled to be repaid out of the firm property. As the moneys of Brown & Co. in fact paid a firm obligation, I see no objection to the subrogation of them in equity to the rights of the surviving partner, or to the regarding of them as entitled to be repaid out of the firm assets. That works injustice to no one."

In *Burchinell* v. *Koon*, 8 Colo. App. 463 (46 Pac. 932), the following language is used:

"The powers of a surviving partner to deal with the firm assets have been established by a long line of adjudications. His right to sell, mortgage, and dispose of those

assets, and apply them, according to his own discretion and judgment, in the payment of debts, has been repeatedly recognized. *Williams* v. *Whedon,* 109 N. Y. 333 (16 N. E. 365, 4 Am. St. Rep. 460); *Fitzpatrick* v. *Flannagan,* 106 U. S. 648 (1 Sup. Ct. 369); *Emerson* v. *Senter,* 118 U. S. 3 (6 Sup. Ct. 981); *Durant* v. *Pierson,* 124 N. Y. 444 (26 N. E. 1095, 12 L. R. A. 146, 21 Am. St. Rep. 686); *Patton* v. *Leftwich,* 86 Va. 421 (10 S. E. 686, 6 L. R. A. 569, 19 Am. St. Rep. 902); *First Nat. Bank of Peru* v. *Parsons,* 128 Ind. 147 (27 N. E. 486); *Krueger* v. *Speith,* 8 Mont. 482 (20 Pac. 664, 3 L. R. A. 291); *Roach* v. *Brannon,* 57 Miss. 490; *Smith* v. *Phelan,* 40 Neb. 765 (59 N. W. 562); *Johnson* v. *Berlizheimer,* 84 Ill. 54 (25 Am. Rep. 427).

"According to the doctrine of all these authorities,— and there are practically none to the contrary,—the surviving partner is entitled to the possession and control of the joint property of the firm for the purposes of winding up the affairs of the copartnership. To accomplish this end, he has a right, according to the settled principles of the law of partnership, to administer the firm affairs and to dispose of its assets. This power is broad enough to cover the right of sale, and includes the power to mortgage, or to deliver property in payment. No limit seems to be put on the power of the partner, except that he is required to devote the assets to the liquidation of outstanding obligations. Some of the cases go so far as to hold that, if he devotes those assets to the payment of his individual debts, it is not a matter of which the general creditors can complain; that, where the transaction is completed, it cannot be impeached by subsequent proceedings. We express no opinion on this matter. This illustrates the tendency of the decisions. The specific question of the power to mortgage has arisen in many cases. Where it has been exercised in good faith, it has been universally upheld. * * *

"It has, therefore, many times happened that the rules laid down in cases where courts of equity have seized upon the firm assets to distribute them according to the rights of the creditors and debtors, or where estates have come into courts to be wound up by proceedings analogous to those in bankruptcy jurisdictions, the courts have treated the surviving partner as a trustee, and have administered the estate according to the equitable rights of the parties. The rule has not been applied in cases where

the surviving partner has undertaken, in the exercise of his power as survivor, to apply the assets to the liquidation of debts, nor have payments been successfully attacked by a creditor who has put his claim into judgment, and come into a court to compel a different distribution of the firm funds after the rights of other persons have been fixed and settled by the acts of the parties. We therefore have no hesitation in holding that the surviving partner had the right, as was plainly declared in one of the cases cited, to mortgage these assets for the payment of this debt. We do not regard the case as at all affected by the fact that a portion of the fund represented by the note was advanced to the survivor after the death of the other member of the firm. The money went into the general firm account, was for the benefit of the estate as controlled by the survivor, and was applied to the liquidation of outstanding firm obligations."

The case of *Durant* v. *Pierson*, 124 N. Y. 444 (26 N. E. 1095, 12 L. R. A. 146, 21 Am. St. Rep. 686), is nearly on all fours with the present one. The partnership was dissolved by the death of one of the copartners. After it was dissolved, the surviving partner borrowed money of a bank to pay the firm indebtedness, and it was so applied. In disposing of the case the court used the following language:

"It thus becomes important to determine whether the loan contracted by the survivor became a firm obligation, for the payment of which its assets may justly be applied. As we have seen, the note given upon procuring such loan bore the name of the firm and that of Henry R. Pierson as survivor, but, at the time that this note was given, it was known to all of the parties concerned that the senior member of the firm had died. The death of a partner puts an end to the copartnership, and there is no longer any power or authority of the surviving partners to carry on for the future a partnership trade or business, or to engage in new transactions, contracts, or liabilities on account thereof. Story, Partn. §§ 342, 343; *Hall* v. *Lanning*, 91 U. S. 160, 170; *Farr* v. *Morrill*, 53 Hun, 31, 35 (5 N. Y. Supp. 720). It is thus apparent that, whilst the note in form would appear to create an obligation of the firm, it is at law unavailable as such, for the reason that there was no power in the survivor to make it. But it does not follow but that it is a claim which ought, in

justice and equity, to be paid out of the firm's assets. If it is, the preference in the assignment would not be void, for the law will not declare fraudulent that which equity adjudges right and proper. *Denton* v. *Merrill*, 43 Hun, 224, 229.

"We must, therefore, consider whether there are equities which will support the claim of the bank to be paid out of such assets. It is apparent that the money borrowed from the bank by the survivor was for the purpose of paying the creditors of the firm the claims then matured and pressing. The amount of the loan was credited upon the open account of the firm with the bank, and subsequently $10,000 thereof, or thereabouts, were drawn out by the survivor upon his check, and used in the payment of the liabilities of the firm. At the time this loan was made, it was not supposed by the officers of the bank or the surviving partner that the firm was insolvent, and no question is made but that both parties acted in good faith. The question is therefore presented whether a surviving partner may, in good faith, borrow money for the express purpose of paying the debts of his firm, and, by so applying the money borrowed, create an equity for the satisfaction of which the assets of the firm may properly be devoted. As we have seen, the survivor became entitled to the assets, which he had the right to sell, mortgage, and dispose of in order to pay the debts and close up the affairs of the copartnership. If he had the power to sell or mortgage, it would seem to follow that he had the power to borrow, and pledge the assets for the repayment of the loan; and, the amount borrowed having been faithfully applied in liquidation of the debts of the copartnership, equity will recognize the justness of the claim of the party making the loan. Cases may arise where the exercise of such authority may be highly expedient, if not necessary, for the preservation of the rights of creditors and persons interested in the distribution of the assets of the firm; as, for instance, creditors may, by levy, expose the assets to a forced public sale under circumstances which would work great sacrifice to the estate. In case a survivor should be insolvent, he might be able to raise money by a pledge to repay out of the partnership assets when he could not obtain it upon his own credit. We do not see that harm could result to the other creditors by permitting this to be done, for it would not increase the obligations of the firm nor lessen their share in the distri-

bution of the assets in case the firm be insolvent. It is not questioned but that the survivor had the right to turn out as a security or pledge the assets of the firm in payment for the money received by him. He could have sold the assets and repaid the money loaned at any time before executing the assignment, and without taint of fraud. It is not apparent how the rights of the parties are changed, and the act of the survivor made fraudulent, by doing that in the assignment which he had the right to do immediately before executing it.

"The precise question involved in this case does not appear to have been passed upon in any reported case, so far as we have been able to discover, except in *Haynes* v. *Brooks*, 8 Civ. Proc. R. 106, 113, where an assignment was made for the benefit of creditors by a surviving partner. In that case, as in this, the creditors had loaned money to the surviving partner to pay a note of the firm. VAN VORST, J., in commenting upon the transaction, said:

"'If a firm obligation was retired by the use of the money loaned or advanced by Brown & Co., the surviving partner would have been entitled to be repaid out of the firm property. As the moneys of Brown & Co. in fact paid a firm obligation, I see no objection to the subrogation of them in equity to the rights of the surviving partner, or to the regarding of them as entitled to be repaid out of the firm assets. That works injustice to no one.'

"The learned judge concluded by ordering the complaint dismissed, thereby sustaining the validity of the assignment. This case was affirmed in the General Term (42 Hun, 528), and in this court in 116 N. Y. 487 (22 N. E. 1083). This question, however, was not considered in either of the appellate courts.

"In the matter of the *Estate of Davis and Desauque*, 5 Whart. 530 (34 Am. Dec. 574), it was held that, after the dissolution of a copartnership, the partner authorized to settle the estate may borrow money on the credit of the firm for the purpose of paying its debts, and, if the credit be given in good faith, though with a knowledge of the dissolution, and the money borrowed be faithfully applied in liquidation of the debts of the partnership, the creditor has a claim against the firm assets, and is not to be considered as a creditor merely of the partner borrowing.

"In the case of *Prudhomme* v. *Henry & Laurans*, 5 La. Ann. 700, it was held that, where a liquidating part-

ner after dissolution has borrowed money to pay the debts of the firm, the partnership is liable so far as the evidence shows that the money was used for the benefit of the firm.

"In the last two cases the partnerships were not insolvent, and the question arose as between the partners.   The courts, however, recognized the claim of the lenders as one which ought to be paid by the partnership.

"In the case under consideration, it is true that the partnership is insolvent, and the question arises as between the bank and creditors of the partnership; but the creditors have not been harmed or prejudiced by the action of the bank in loaning the money to the survivor, for the assets were increased in value to the amount of the loan, and the money drawn out of the bank was applied in extinguishment of the claims of the creditors, thus reducing to that extent the liabilities of the firm.

"When a partnership is dissolved by the death of a partner, the survivor is entitled to the possession and control of the joint property for the purpose of closing its business, and to that end and for that purpose he may, according to the settled principles of the law of partnership, administer the affairs of the firm, and by sale, mortgage, or other reasonable disposition of the property, make provision for meeting its obligations.   He may, for that purpose, borrow money, and give a valid pledge of the co-partnership property for its repayment.   *Williams* v. *Whedon,* 109 N. Y. 333 (16 N. E. 365, 4 Am. St. Rep. 460); *Emerson* v. *Senter,* 118 U. S. 3, 8 (6 Sup. Ct. 981); *Fitzpatrick* v. *Flannagan,* 106 U. S. 648 (1 Sup. Ct. 369); *Butchart* v. *Dresser,* 4 De Gex, M. & G. 542, 10 Hare, 453; *In re Clough, Bradford Commercial Banking Co.* v. *Cure,* L. R. 31 Ch. Div. 326.

"In *Case* v. *Beauregard,* 99 U. S. 119, 124, Mr. Justice Strong, in commenting upon the rights of partners in a suit involving the marshaling of the assets, says:

"'The right of each partner extends only to a share of what may remain after payment of the debts of the firm and a settlement of its accounts.   Growing out of this right, or rather included in it, is the right to have the partnership property applied to the payment of the partnership debts in preference to those of any individual partner.   This is an equity that partners have as between themselves, and in certain circumstances it inures to the benefit of the creditors of the firm.   The latter are said to have a privilege or preference, sometimes loosely denominated a "lien," to have the debts due to them paid out of the assets of a firm in course of liqui-

dation to the exclusion of the creditors of its several members.. Their equity, however, is a derivative one. It is not held or enforceable in their own right. It is practically a subrogation to the· equity of the individual partner, to be made effective only through him. Hence, if he is not in a condition to enforce it, the creditors· of the firm cannot be. *Rice* v. *Barnard,* 20 Vt. 479 (50 Am. Dec. 54) ; *Appeal of the York County Bank,* 32 Pa. St. 446.

" 'But, so long as the equity of the partner remains in him, so long as he retains an interest in the firm assets as a partner, a court of equity will allow the creditors of the firm to avail themselves of his equity, and enforce through it the application of those assets primarily to the payment of the debts due them, whenever the property comes under its administration.'

"In the case of *Saunders* v. *Reilly,* 105 N. Y. 12 (12 N. E. 170, 59 Am. Rep. 472), it was held that a mere general creditor of a firm, having no execution or attachment, has no lien whatever upon its personal assets; that, while firm creditors are entitled to a preference over creditors of the individual members of the firm in the ·payment of their debts out of the assets in the course of liquidation, their equity is not held or enforceable in their own right, but is a derivative one,—practically a subrogation of the· equity of each individual partner to have the firm assets applied primarily to the payment of its debts,—and, where no such equity exists in favor of any member of the firm, the firm creditors have none; and therefore, where a judgment is recovered against all the members of a firm upon a joint obligation, but not an indebtedness of the firm, the firm property may be levied upon and sold on execution issued on the judgment. See, also, *Dimon* v. *Hazard,* 32 N. Y. 65; *Stanton* v. *Westover,* 101 N. Y. 265 (4 N. E. 529); *Kirby* v. *Schoonmaker,* 3 Barb. Ch. 46 (49 Am. Dec. 160); *Brown* v. *Higginbotham,* 5 Leigh,. 583 (27 Am. Dec. 618); *Peyton* v. *Stratton,* 7 Grat. 380; *Stebbins* v. *Willard,* 53 Vt. 665.

" It appears to us that the conclusion is warranted from the authorities referred to that, where a person in good faith loans money to a surviving partner and where the money is faithfully applied by such partner in satisfaction of the liabilities of the firm, the claim becomes one which, in equity, should be paid out of the assets of the firm; and, in an accounting between the survivor and the personal representative of the deceased partner, equity will recognize the right of the surviving partner to have the money so borrowed and applied by him repaid out of

the assets of the firm, and an assignment so directing is not fraudulent."

In the case at bar, the money of the People's National Bank was used for the benefit of this partnership. Had Homer Wilcox sold the partnership property, and applied the proceeds to paying this debt, there can be no doubt he would be entitled to a credit of the amount so expended. While surviving partner he gave a mortgage on partnership property to secure the payment of a debt which should be paid out of the partnership assets. We have no doubt of his right to do so. As the mortgage was given before the execution levy was made, it created a lien which should have priority over the execution levy.

A decree may be entered in accordance with this opinion, with costs to the People's National Bank.

CARPENTER, GRANT, and HOOKER, JJ., concurred.
MONTGOMERY, J., took no part in the decision.