MARY E. GANDY V. ESTATE OF WILLIAM C. BISSELL ET AL.

FILED SEPTEMBER 22, 1904.   No. 13,359.

1. Trial: EVIDENCE. The evidence in this case is found to be sufficient
   to require the submission of the issue to the jury.

2. Pleading: EVIDENCE. A fraudulent alteration of the note sued upon
   may be shown under the general issue, and, when the whole
   evidence fairly raises the question, testimony tending to show
   that no such indebtedness as the one sued upon ever existed is
   competent upon the issue of alteration.

3. Action on Note: EVIDENCE. In an action upon a promissory note,
   the plaintiff's possession and production of the note at the trial
   is *prima facie* evidence of delivery and ownership.

4. ———: DELIVERY. If the note when executed is by agreement of
   the parties delivered to a third person to be by him delivered to
   the payee upon the performance of a condition precedent, and
   the condition is performed after the death of the maker of the
   note, the delivery becomes complete by the performance of the
   condition.

5. ———: EVIDENCE. When, in an action upon a promissory note,
   there is evidence tending to show that the note sued upon is not
   the genuine note of the defendant, it is completent to show the
   circumstances surrounding the parties at the time of the alleged
   execution of the note.

ERROR to the district court for Richardson county:
JOHN S. STULL, JUDGE. *Reversed.*

*S. P. Davidson* and *Reavis & Reavis,* for plaintiff in
error.

*C. Gillespie* and *Francis Martin,* contra.

SEDGWICK, J.

The nature of this case is sufficiently stated in the
former opinions of this court. In *Gandy v. Estate of Bis-
sell,* 3 Neb. (Unof.) 47, a judgment of the district court
for Richardson county in favor of the defendant estate
was reversed for errors there pointed out. After another

trial in the district court, the case was again brought here, and a second judgment of the district court in favor of the defendant estate was affirmed. 5 Neb. (Unof.) 184. Upon rehearing and further argument we are convinced that the last judgment of the district court is also erroneous, and a new trial must be had.

1. The plaintiff insists that the court should have given a general instruction in her favor, but we are satisfied that the plaintiff was not entitled to such instruction for the reasons stated in the former opinion herein, and for other reasons that appear in the record. We are satisfied that the question of the sufficiency of the evidence in this case is preeminently one for the jury, and not a question for the court, and as there must be another trial, it is apparently unadvisable to state further reasons for this conclusion.

2. No doubt the evidence of the witness Hawley was competent. There was sufficient evidence before the jury to justify the conclusion that Mr. J. L. Gandy was either the real party in interest or had such control of the business of Mrs. Gandy that his admissions in regard to this note would be competent. His wife, Mary E. Gandy, took no part in transacting any of the business with Mr. Bissell. If she had any interest in the business whatever, she was content to leave the entire management thereof with her husband. There was evidence that Mr. Bissell had been told that the Gandys—that is, J. L. Gandy and his wife—claimed to hold a large demand against him. He therefore sought a settlement, and it was in pursuance of this desire of Mr. Bissell's that the Hawley settlement was made. Mr. Gandy knew this, and, although he was acting for his wife in all things as well as for himself, he completed a settlement with Mr. Bissell without mentioning the existence of this extraordinary claim. Not only so, but if Mr. Hawley's testimony is to be believed, Mr. Gandy assured him that all claims of both himself and wife were settled, and that his interest and authority were such that it was unnecessary to have Mrs. Gandy's signature to the receipt which was given as evidence of complete settlement.

Such evidence tends to show that at that time, at least, no such claim existed as the one now sued upon, and was competent for that purpose. There was no plea of payment or settlement of this particular claim, and such defense, of course, could not be available to the estate. This distinction should have been made clear to the jury in the court's instructions. It was competent to prove under the issues joined that no such claim as that sued for ever existed, and because the proof offered tended in that direction it was competent. The jury should have been informed of the fact that there was no allegation of payment or settlement of the claim, and that the evidence in question was not allowed for the purpose of proving such payment or settlement.

The third instruction asked by the plaintiff was an attempt to supply this necessary information to the jury, but was properly refused by the court because it contained the statement that if "the signature to the note in controversy is the genuine signature of William C. Bissell they will find for the plaintiff." This was not the law of the case, because under the issues formed, the signature might be genuine; in fact, it would seem from the evidence that the name signed to the note was the genuine signature of Bissell, and yet under the issues it was competent to prove that Mr. Bissell did not sign the note sued upon. If the note had been fraudulently changed and the amount raised after the signature of Mr. Bissell, it was a forgery and was no more the note of Mr. Bissell than if the signature itself had been forged and was not the genuine signature of Mr. Bissell. This defense may be made under the general issue. 3 Randolph, Commercial Paper (2d ed.), sec. 1783. There was evidence tending to show that Bissell had given small notes to plaintiff, and under all of the evidence it was for the jury to say whether the note sued upon was genuine. As well might the court have instructed the jury to find a verdict for the plaintiff as to have given this instruction as asked.

3. The third and fourth instructions given by the court

for the defense, we think, are clearly erroneous and require a reversal of the judgment. The plaintiff had possession of the note, produced it upon the trial and it was received in evidence. This made a *prima facie* case of due delivery of the note. The defense undertook to prove that the note was, in fact, not delivered to Gandy until after the death of Mr. Bissell. This evidence on the part of the defense was not very satisfactory, and tended likewise to prove that Mr. Bissell had made himself liable upon some kind of bond at Mr. Gandy's request, and that when the note in suit was executed, it was, by agreement between the parties, left in the hands of a third party until such time as Mr. Gandy should cause Mr. Bissell to be released from liability upon his account, and that after Mr. Bissell's death the bond upon which Mr. Bissell was liable for Mr. Gandy had been satisfied, and the note then delivered to Mr. Gandy by the holder thereof pursuant to the original agreement. This seems to be the only evidence offered to overcome the presumption of due delivery of the note, which arises from the fact of possession. In this condition of the evidence upon this point the four instructions, which are set out in the former opinion herein, were given in behalf of the defense.

In an early Massachusetts case, which may be said to be a leading case upon this point, it was said by Mr. Chief Justice Parsons:

"If a man deliver a bond as an escrow, to be delivered on condition performed, before which the obligor or obligee dies, and the condition is after performed—here there could be no second delivery, yet is it the deed of the obligor from the first delivery, although it was only inchoate; but it shall be deemed consummate by the performance of the condition." *Wheelwright v. Wheelwright*, 2 Mass. *447, 3 Am. Dec. 66; 6 Am. & Eng. Ency. Law (1st ed.), 870, 871.

The statement is repeated in these instructions that to constitute a delivery that would be recognized in the law, the note must have been delivered to Mr. Gandy by

Mr. Bissell in his lifetime, or by the duly appointed executor of his estate after his death. It is insisted that this proposition is technically correct and that a delivery in escrow, as indicated in the evidence above referred to, if the conditions afterwards were complied with by Mr. Gandy, would be, in the view of the law, a delivery by Mr. Bissell in his lifetime to Mr. Gandy, and so come technically within the language of the instructions; but there is nothing in the record to indicate that the jury understood this technical meaning to be intended by the court in these instructions. On the other hand, it seems very probable that from the repetition of this language, in the absence of any further explanation, the jury understood the court to mean that unless Mr. Bissell in person, or the executor of his estate after Mr. Bissell's death, manually delivered the note to Mr. Gandy, it was no delivery which the law would recognize. The jury should have been fully instructed upon the law of conditional delivery, which was not done, and we think that, in view of the circumstances under which these instructions were given, they were clearly erroneous.

4. It was maintained by the defense that Mr. Bissell was a well to do man, and that it was highly improbable that he should have been indebted to the plaintiff for so long a time. The evidence of the witness Wilson tended to show that it was necessary for Mr. Bissell to borrow money with which to pay his taxes in 1889. It seems to have been the contention of the plaintiff, and supported by some evidence, that the indebtedness for which the note in suit was given existed at that time. We think, therefore, the court erred in not allowing the jury to consider the evidence of the witness Wilson.

The judgment of the district court is reversed, and the cause remanded.

REVERSED.