MARY E. GANDY, APPELLANT, V. ESTATE OF WILLIAM C. BISSELL, APPELLEE.*

FILED MARCH 5, 1908. No. 15,331.

1. Appeal: VERDICT: EVIDENCE. Where the judge of a district court, who has had the advantage of seeing the witnesses and observing their demeanor while testifying, overrules a motion for a directed verdict, and there is sufficient competent evidence in the record, standing alone, to sustain the verdict returned by the jury, this court will not disturb such a verdict and reverse a judgment rendered thereon, even though the evidence in opposition to the verdict is such, as shown by the record, that a peremptory instruction might have been sustained.

2. Executors and Administrators: CLAIMS AGAINST ESTATE: EVIDENCE. Where a person, by deed, shortly before his death conveys all of his lands to a third party for a nominal consideration, which

* Rehearing denied. See opinion, p. 117, *post*.

Gandy v. Estate of Bissell.

deed is withheld from record until after the death of such person, and, after his death, an unsecured claim for a large amount is filed against his estate, and it appears from the testimony of the surviving wife of such deceased person that she, at least, joined in said deed on account of rumors which she and her deceased husband had heard in relation to said claim, such deed is proper evidence, and it is error to exclude it.

3. Appeal: ADMISSION OF EVIDENCE. Counsel should not be permitted, in the face of proper objections, to get before a jury improper evidence, and then escape the consequences of their action by consenting that it be stricken from the record.

4. ———: ———. In such case, if the evidence is of such a character, under the particular circumstances of the case, that it may have affected the verdict, the error cannot be disregarded. *Missouri P. R. Co. v. Fox*, 60 Neb. 531, and cases there cited, distinguished.

5. Executors and Administrators: CLAIMS AGAINST ESTATE: EVIDENCE. While, under particular circumstances which may arise on the trial in the district court of a claim against a decedent's estate which has been appealed to said court, it may be proper to permit evidence of the date when such claim was filed in the probate court and the last date for filing claims, it is not proper to submit to the jury copies of the proceedings in said court.

6. Trial: ARGUMENT OF COUNSEL. It is not reversible error for the district court to refuse to permit counsel, when addressing the jury, to discuss immaterial evidence.

7. Notes: DELIVERY. In a suit upon a promissory note, where the plaintiff has possession of the note, produces it upon the trial, and it is received in evidence, such facts make a *prima facie* case of due delivery of the note.

8. Venue, Change of. "When it shall be made to appear to a district court that a fair and impartial trial of a cause cannot be had in the county where brought, then such court has not only the discretion, but it is its duty, to send the cause to some adjoining county for trial." *Omaha S. R. Co. v. Todd*, 39 Neb. 818, followed.

9. ———: ———. And in such case the court is not limited to the adjoining county, but where the showing is equally or sufficiently strong as to an adjoining county the case should be sent to some county where the alleged prejudice does not exist.

APPEAL from the district court for Pawnee county: PAUL JESSEN, JUDGE. *Reversed.*

*S. P. Davidson, E. Falloon* and *Samuel Rinaker,* for appellant.

*Samuel H. Sedgwick, C. Gillespie, Francis Martin* and *H. Ferneau, contra.*

FAWCETT, C.

The nature of this case is sufficiently stated in the former opinions of this court, as reported in 3 Neb. (Unof.) 47, 5 Neb. (Unof.) 184, and 72 Neb. 356. Following the reversal in 72 Neb. 356, the case was remanded to the district court, and was again tried to a jury, resulting in a verdict and judgment for the defendant. From that judgment plaintiff prosecutes her third appeal to this court. We do not deem it necessary to consider the evidence or questions of law considered and discussed in the former opinions, and will therefore confine this opinion to the new questions raised on the present appeal. A large number of errors are assigned by plaintiff in her assignment of errors, but, under the well-established rule in this court, we shall consider only those which are pointed out and discussed in appellant's brief.

Plaintiff's first complaint, and the one argued at greatest length, is that the verdict is not sustained by the evidence; that the evidence so strongly preponderates in favor of plaintiff that the verdict must have been given under the influence of passion or prejudice, in utter disregard of the evidence produced by plaintiff; and that the evidence is so overwhelmingly in favor of plaintiff that the district court should have directed a verdict in her favor. This contention was made on both of the former appeals, but in each instance this court held that the evidence offered in behalf of defendant was sufficient to require the submission of the case to the jury. On this branch of the case, counsel for defendant urge that there is no merit in plaintiff's contention that the court should have directed a verdict in her favor, but that, three suc-

cessive juries having passed upon the case and returned their verdicts in favor of defendant, the present judgment should be affirmed and this protracted litigation ended. If defendant's statement of this point were accurate it would be entitled to great weight, but we do not think the record will bear out the statement that three successive juries have passed upon the case, *as presented by the present record*, adversely to plaintiff. The record presented to this court was substantially the same on both of the former appeals, but upon the last trial of the case plaintiff introduced considerable new testimony by some six different witnesses. This testimony is now in the record for the first time; hence, but one jury has yet passed upon the testimony now before us. There is no claim that the defense was in any manner strengthened on the last trial of the case by the introduction of any new evidence. The case for the defendant, therefore, is substantially the same as on the former appeals. Plaintiff, however, on the last trial introduced all of the evidence which appeared in the records on the former appeals, and in addition thereto the following new testimony:

George Turner testifies that he had lived at Humboldt (the home of the Gandys and Mr. Bissell), for 19 years; that he is now filling his second term as councilman of the city of Humboldt; that he lived neighbor to Mr. Bissell (the deceased) in the years 1892, 1893, 1894; that in October or November, 1894, Mr. Bissell talked with him about securing a loan. The witness says: "One thing led on to another, and we kept on talking. I don't know as I asked him how much he owed, but some way, I asked him how much he wanted to borrow, and he said between $5,000 and $6,000. He said, 'I owe M. E. Gandy about that amount.' He said between $5,000 and $6,000." J. C. Worral testified that he at one time lived on the Bissell farm; that in the year 1892 he had a talk with Mr. Bissell about the purchase of one of his (Bissell's) quarter sections of land. He says: "I asked what it would take to buy it, and he said he would sell that quarter of land for

$6,500. We talked about selling it, and finally he said, 'I will throw off $50 for commission and make it $6,450,' and he says, 'I owe M. E. Gandy a note of $5,600 that you will have to pay if you buy the land.' " J. H. Shook, who has been road supervisor, postmaster, county commissioner, and member of the legislature, testifies that in 1893 "Bissell wanted to sell me his place. I inquired into it a little, and I was to pay him $900, and I could settle the balance with Dr. Gandy, or M. E. Gandy, that would be $5,600." F. W. Samuelson, the banker with whom it appears both Mr. Bissell and the Gandys did business, says that in 1895 Mr. Bissell came to him and wanted to know how he "would lend money on land—just making a farm loan," and, in answer to a question as to what Mr. Bissell said about the purpose for which he wanted the loan, testified: "Well, at that time I believe it was that I asked him what he wanted with such a large amount of money— such a large loan—and he said that he was owing Mrs. Gandy quite an amount of money." M. R. Wilson, ex-sheriff of Richardson county, testifies that in July, 1892, Mr. Bissell told him that he was owing the Gandys; that he (the witness) asked Mr. Bissell "if he wasn't afraid he would get into trouble with the Gandys. He said no, he didn't have no mortgage on him. They just had a note." He further testifies that in that conversation Mr. Bissell stated that he owed the Gandys $5,500 or $5,600 or between $5,000 and $6,000. Edward Moyer, who now lives in Kansas, testified that he lived in Humboldt from 1878 to 1888; that he and Mr. Bissell were both members of the same church, and took quite an interest in each other; that he and his wife would often go down and stay with the Bissells; that, during his conversations with Mr. Bissell, "he told me a good deal about his business and about his troubles"; that in 1892, while on a visit to Humboldt, he had a conversation with Mr. Bissell with reference to the latter's financial circumstances, and testifies that Mr. Bissell said to him: "I am in shape now that I think I am going to make out all right. I just had settled

it with Mrs. Gandy about that time or just then or a little before, I don't know how it was any more. He says, 'Now I have got it all in shape, in one note, all I owed Gandy, and if I can sell one quarter of that land I can get out.' He says, 'You better come up and buy that quarter of me.' I couldn't do that, of course, and he said, 'If I can sell that quarter I will get out all right.' Q. Did he in any way intimate to you the amount of the note which. he said he gave? A. It was something between $5,000 and $6,000, as nearly as I can tell, it was nearly $6,000, I remember that, and he thought he could get out if he could sell that quarter." Mrs. Maggie Carsh Hyde, now a married woman living at St. Joseph, Missouri, testifies that she lived in Humboldt 23 years; that she used to go to school to Mr. Bissell, and that she lived with him a year before he died, and at his house "some while afterwards"; that she heard a conversation between Mr. Bissell and the Reverend Mr. Hawley; that she was present and heard the conversation when Mr. Bissell authorized Mr. Hawley to settle Dr. Gandy's doctor bill; that she was present and heard the conversation when Mr. Hawley subsequently told Mr. Bissell that he had made the settlement with Dr. Gandy. She says that when Mr. Hawley entered he said, "I settled the doctor bill"; that Mr. Bissell said, "You have?" that he replied, "Yes, I settled it up very pleasantly." She also testifies that on the evening of that same day she had a conversation with Mr. Bissell about the matter. She says: "Mr. Bissell talked to me as if I was one of the family. They talked their financial business, and the evening Mr. Hawley gave the receipt to Mr. Bissell he had his feet upon the stove, and was talking about this doctor bill, and he said, 'I am very glad the doctor bill is paid now.' I said, 'Then you have settled with Dr. Gandy.' He said, 'Yes, I am very glad. I owe M. E. Gandy a large amount, but that will be fixed so she can get all of her money if anything happens to me. I will see that she is not cheated out of anything.' "

It is on the strength of the foregoing new testimony,

coupled with what had formerly been offered, that counsel for plaintiff base their argument that the verdict is the result of passion and prejudice and of an utter disregard by the jury of the testimony of these witnesses. This testimony gives color to plaintiff's contention, and at least causes a grave suspicion in our minds as to whether the jury did not in fact try Dr. Gandy upon his alleged unsavory record, instead of trying the issues between Mrs. Gandy and the defendant. But, this case was tried before a judge, who has a well-earned reputation for integrity and a fearless discharge of his duty as he sees it. He had the advantage of seeing the witnesses upon the stand and noting their demeanor while testifying. He heard the testimony given, and, inasmuch as he, from his vantage ground, deemed the case, in the light of all of the evidence and facts and circumstances of the trial, one for the jury, we cannot say that he erred in not directing a verdict for plaintiff. We are therefore compelled to hold adversely to plaintiff on this branch of the case.

Plaintiff's second contention is that the court erred in excluding from the jury the copy of the deed from the deceased to William I. Phillips conveying the farm of deceased. The defendant had introduced the testimony of the witness Ida Carsh to the effect that Mr. and Mrs. Bissell had informed her that they had sold a farm in Illinois for $5,400, from the proceeds of which the two quarter sections of land in Nebraska had been purchased; that the difference had been used in paying moving expenses, buying a lot in town, building a house on the lot, and making a small loan of $300 to one Stearns. All this was evidently for the purpose of showing that the deceased had sufficient means of his own, and, hence, would not be under the necessity of borrowing from Mrs. Gandy the large sum of money represented by the note in controversy. There is the testimony, also, of Mrs. Bissell, widow of deceased, that her reason for making that deed (which was given for an express consideration of $1), was on account of the claim which she understood the Gandys were making. Dr.

Gandy's testimony is to the effect that this deed was executed shortly after he had the interview with Mr. Bissell, at which interview, according to Mrs. Bissell's testimony, he declared to Mr. Bissell that he did not have any large claim against him, but at which, according to his own testimony, he told Mr. Bissell that he had never said he had a large *mortgage* against him; that he had no mortgage at all, but had a *note* for a large amount. This deed, being executed so near the time when that conversation took place between Mr. Bissell and Dr. Gandy, was competent evidence to go to the jury. We think plaintiff might well argue the improbability of Mr. and Mrs. Bissell's making a deed to all of their property for a consideration of $1, if Dr. Gandy had assured them that he had no claim whatever against them; while on the other hand, if he had reminded them of the large note which he claimed his wife held against them, that might have been an inducement for them to make the deed under the circumstances shown by the record. However that may be, the fact that Mr. Bissell, shortly before his death, conveyed all of his property for an express consideration of $1, and that soon after his death this unsecured note of $5,600, with a large amount of accrued interest, was filed against his estate would, in our judgment, entitle plaintiff to show such transfer of the property, and have it go to the jury as a circumstance tending to show that the deceased realized that there was a large unsecured claim outstanding against him, and that the deed was made for the purpose of evading, if possible, the payment of that claim. We think, therefore, it was error on the part of the court to exclude the deed referred to; and, for the same reason, it was error to exclude the deed from Phillips to Enos W. Shaw, trustee. We think it was proper to introduce both of those deeds, as well as the indorsements showing the dates when they were recorded, it being a circumstance worthy of note that both of those deeds were withheld from the records until after Mr. Bissell's death.

The third contention of plaintiff is that the court erred in overruling their objections to that part of the cross-examination of Dr. Gandy relating to a certain judgment against him in the case of *Cummins v. Fries,* and in overruling plaintiff's motion to strike out all of that part of such cross-examination. The case of *Cummins v. Fries* was tried four or five years after the making of the note in controversy. No proper foundation had been laid for any such cross-examination. After getting all of the cross-examination before the jury, counsel for defendant consented that the court might sustain plaintiff's motion, and after such consent was given the court sustained the motion and excluded the testimony, stating to the jury: "Gentlemen, the testimony introduced in this record within the last half hour regarding a certain case in Pawnee county, in which case the plaintiff and Dr. Gandy and others had and made affidavits showing the estate of Bissell as surety that he had paid these obligations and this testimony has been stricken from the records, and all testimony bearing upon that subject and unless it was introduced further you will not consider the same, you will remember the testimony of the estate of Mr. Bissell having paid some money, unless there is other testimony on that point you will not regard it at all." The above is a literal quotation from the bill of exceptions. We greatly fear that it is not an accurate transcript of what the court said, but we must take the record as we find it. So taking it, we are compelled to hold that it did not sufficiently withdraw from the jury the improper cross-examination which had just been permitted. Moreover, even if the court had fully and completely charged the jury in that behalf, it would not have cured the error. Counsel should not be permitted, in the face of proper objections, to get before a jury improper testimony, and then escape the consequences of their action by consenting that it be stricken from the record. It is not as easy to extract poison as it is to inject it. Jurors are human. They are not experts in weighing evidence. They are not skilled in

the art of disregarding the incompetent and immaterial, and considering only that which is competent and material. As is said in *Erben v. Lorillard,* 19 N. Y. 299: "When illegal evidence properly excepted to has been received during a trial, it must be shown that the verdict was not affected by it or the judgment will be reversed. If the evidence may have affected the verdict, the error cannot be disregarded. The rights of parties can only be preserved by adhering to this rule. It would be vain to observe the rules prescribed by law to secure an impartial jury, if their minds are to be subjected to the influence of illegal evidence after they are impaneled. It does not follow that impressions thus obtained will have no effect, although the judge directs them to disregard the evidence."

Counsel for defendant rely upon *Missouri P. R. Co. v Fox,* 60 Neb. 531, and the other three Nebraska cases cited on page 555 of the opinion in that case, which hold generally that "error in admitting improper evidence is cured by the court's withdrawal of such evidence from the jury." Like all general rules, this rule must yield to special circumstances. No general rule has ever yet been formulated by the mind of man which does not have its exceptions. The facts and circumstances in the four cases above noted are so radically different from those in the case at bar that those cases are readily distinguishable from this. In none of those cases was there anything out of the ordinary. No question of bias, prejudice or public sentiment against any of the parties or witnesses appears; hence, there was no reason in any of those cases to fear that the minds of the jury had been poisoned by such improper evidence. The case at bar presents an entirely different situation. Here, the main assault of defendant's counsel is upon Dr. Gandy, husband of the plaintiff. It is impossible to read their brief submitted in this case, and follow the record of their examination of witnesses, without reaching the conclusion that every effort was made, on the part of counsel for defendant, to create in the minds of the jury a belief that Dr. Gandy was the real party plaintiff—a

question not raised by the pleadings—and that he was the embodiment of everything that is dishonest and corrupt in his business transactions. So far as this could be done within the rules of practice, counsel had a perfect right to take that course, but, in such a case, counsel should not be permitted to introduce a line of improper evidence for the sole purpose of prejudicing the jury, and, when they had accomplished their purpose, consent that it be stricken out, and shield themselves behind a very proper rule announced by this court in cases of a radically different character. We do not think, therefore, that the rule announced in the cases above referred to can be invoked in this case. We have never known a case where we think the rule announced by the New York court of appeals should be observed with greater strictness than in the case at bar. Dr. Gandy for some reason, whether rightfully or wrongfully, has had a great deal of trouble in the community where he has resided, and in Pawnee county, where the case was tried. So far as it could be done within the rules of evidence, counsel were entitled to take advantage of that fact, as affecting his credibility; but in such a case the rules should not have been in the least relaxed. We think, therefore, that it was error to permit the cross-examination complained of, and that in striking it out by consent of counsel for defendant and in admonishing the jury as above set out the error was not cured.

Plaintiff's fourth contention is that the court erred in overruling plaintiff's objection to the introduction of defendant's exhibit "E," which consisted of a copy of the orders of the county court of Richardson county, approving the bond of the executor, fixing the time within which the creditors could file their claims, and giving the time for the publication of notice to creditors, and the original claim of plaintiff with the time when it was filed for allowance. It appears that plaintiff's claim was filed on either the last or the next to the last day allowed for filing claims against the Bissell estate; and counsel for defend-

ant argue that this was a circumstance which they had a
right to show to the jury in support of their contention
that plaintiff herself regarded her claim as a stale claim.
In this we are inclined to think counsel for defendant
were right; still we do not think that the entire transcript
of the county court should have been given to the jury. It
was sufficient for defendant's purpose to show the date
of the filing of the claim.

Plaintiff's fifth contention is that the court erred in not
allowing counsel for plaintiff to argue to the jury that it
was in evidence that the National Christian Association
is an organization to fight secret societies, and is the real
beneficiary of the estate of William C. Bissell, and that
the conveyance of Mr. Bissell hereinbefore referred to
grew out of that fact. Dr. Gandy's attention was called
to the testimony which had been given by the witness
Hawley relating to the fact of Mr. Bissell's having deeded
his property away. On his redirect examination, in an-
swer to a question as to what Mr. Hawley had told him in
the conversation referred to, Dr. Gandy testified that Mr
Hawley told him that Mr. Bissell had deeded his property
away to a rich corporation in Chicago, the National Chris-
tian Association, for the purpose of fighting secret socie-
ties, and that if he (Gandy) did not settle with him he
would never get a cent out of it. This testimony was ad-
mitted without objection, and on the strength of it Mr.
Falloon, of counsel for plaintiff, in addressing the jury,
sought to make the argument above indicated. Defend-
ant's counsel objected to this line of argument, and their
objection was sustained. We think the fact as to who
was the real beneficiary of the Bissell estate, or the pur-
pose to which Mr. Bissell's grantees might devote the
property, or whether the statement attributed to Mr. Haw-
ley was true or not were all immaterial. If so, then the
refusal of the court to permit the proposed argument was
not reversible error.

Plaintiff's sixth contention is that the court erred in

refusing certain instructions requested by plaintiff. In their assignment of errors they complain of the refusal of the court to give instruction No. 1, requested by plaintiff, but in their brief they for some reason abandon that contention. This brings us to the consideration of the other instructions requested by plaintiff. Without quoting it here, we do not think the court erred in refusing plaintiff's instruction No. 2, for the reason that that instruction entirely ignores the question of delivery of the note in controversy. Instructions Nos. 3 and 5, requested by plaintiff, we think are fully covered by instructions Nos. 6 and 8½, given by the court on its own motion.

Instruction No. 4, requested by plaintiff, is as follows: "The court instructs the jury that, if it appears from the evidence in this case that the note alleged in plaintiff's petition was signed by William C. Bissell in his lifetime as alleged in said petition, then the fact which appeared on the trial of this case, that said note was in the possession of the plaintiff and produced by her at this trial, of itself raises a legal presumption that said note was duly delivered to the plaintiff and lawfully in her possession, and that the conditions, if any, connected with the delivery of said note were fully complied with." In the opinion on the last hearing of this case in this court, reported in 72 Neb. 356, the court say: "The plaintiff had possession of the note, produced it upon the trial and it was received in evidence. This made a *prima facie* case of due delivery of the note. The defense undertook to prove that the note was, in fact, not delivered to Gandy until after the death of Mr. Bissell. This evidence on the part of the defense was not very satisfactory, and tended likewise to prove that Mr. Bissell had made himself liable upon some kind of bond at Mr. Gandy's request, and that when the note in suit was executed, it was, by agreement between the parties, left in the hands of a third party until such time as Mr. Gandy should cause Mr. Bissell to be released from liability upon his account, and that after Mr. Bissell's death the bond upon which Mr. Bissell was

liable for Mr. Gaudy had been satisfied, and the note then delivered to Mr. Gaudy by the holder thereof pursuant to the original agreement. This seems to be the only evidence offered to overcome the presumption of due delivery of the note, which arises from the fact of possession." The law, as thus stated by SEDGWICK, J., meets with our approval, and we think entitled plaintiff to have the instruction given.

Instruction No. 6, requested by plaintiff, is the one in which plaintiff asks for a directed verdict This is fully covered by our discussion of plaintiff's first contention. Counsel for plaintiff in their brief do not refer to or discuss any of the instructions given by the court on its own motion. We therefore assume, without deciding, that they are free from error.

Plaintiff's seventh and last contention is that the court erred in sending the case to Pawnee county for trial on the change of venue granted from Richardson county. We have carefully examined the showing made by plaintiff for a change of venue from Richardson county, and also the showing made why the case should not be sent to Pawnee county. We fully recognize the rule that an application for a change of venue is addressed to the sound discretion of the court, but we must also recognize the rule that, when a proper showing is made, then the court not only has the discretion, but it is its duty, to send the case to some adjoining county for trial. We think the rule announced in *Omaha S. R. Co. v. Todd*, 39 Neb. 818, cited by counsel for defendant, is the correct rule. The first paragraph of the syllabus reads: "When it shall be made to appear to a district court that a fair and impartial trial of a cause cannot be had in the county where brought, then such court has not only the discretion, but it is its duty to send the case to some adjoining county for trial." In this case the court considered that the application for a change of venue made by plaintiff was sufficient to entitle her to the change; and properly sustained plaintiff's motion. Having reached that conclusion, we

think the court should have sent the case to some county entirely free from the same prejudice which existed against plaintiff in Richardson county. The showing made by plaintiff why the case should not be sent to Pawnee county was, in our judgment, much stronger than that made in support of its motion to have the case removed from Richardson county. If, therefore, the showing was sufficient to entitle plaintiff to a removal of the case from Richardson county, it certainly was sufficient to entitle her to have it sent to some county other than Pawnee. The counties of Richardson, Pawnee, Johnson, and Nemaha all embrace a territory in which Dr. Gandy is well known, and where his previous troubles seem to have been very generally discussed. If the case was to be sent from Richardson county, we see no good reason why it should not have been sent to some county in the same district not included in plaintiff's application for change of venue. Such a course would have been prudent, and, in our opinion, is the course which should have been pursued.

We have given this case very careful consideration with the view of affirming the judgment of the court below if possible, in order to end this expensive and long-continued litigation; but the more we have examined the record and studied the case, the more firmly we have become impressed with the conviction that plaintiff ought to be given a new trial in some county where both parties may be able to go before a jury upon an equal footing.

We therefore recommend that the judgment of the district court be reversed and the cause remanded for a new trial in harmony with this opinion; and with instructions to change the venue to some county other than Richardson, Pawnee, Johnson or Nemaha.

AMES and CALKINS, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and

the cause remanded for a new trial in harmony with said opinion; and with instructions to change the venue to some county other than Richardson, Pawnee, Johnson or Nemaha.

REVERSED.

LETTON, J., not sitting.

The following opinion on motion for rehearing was filed July 17, 1908. *Former judgment as modified adhered to. Rehearing denied:*

FAWCETT, C.

We are asked to set aside our opinion in this case, *ante,* p. 102, and grant a rehearing. One of the reasons assigned in the motion for rehearing is that we were wrong in holding that the district court erred in refusing to give instruction No. 4, requested by plaintiff. The instruction referred to reads as follows: "The court instructs the jury that, if it appears from the evidence in this case that the note alleged in plaintiff's petition was signed by William C. Bissell in his lifetime as alleged in said petition, then the fact which appeared on the trial of this case, that said note was in the possession of the plaintiff and produced by her at this trial, of itself raises a legal presumption that said note was duly delivered to the plaintiff and lawfully in her possession, and that the conditions, if any, connected with the delivery of said note were fully complied with." Our former holding with reference to this instruction was based upon a prior opinion in this case, reported in 72 Neb. 356. On a more careful consideration of the case we think that the criticism of our holding in reference to this instruction is sound. The instruction goes further than the rule announced in 72 Neb. 356. We think the use of the word "legal," as qualifying the word "presumption," might mislead the jury into believing that the presumption referred to was a conclusive presumption. While it is true that the possession of a note raises the presumption that it came lawfully into the

hands of the holder, such presumption is no more than a *prima facie* presumption of fact, subject to be overcome by other circumstances. As this element was not contained in the instruction tendered, it was properly refused. Our former opinion is, therefore, modified in accordance with the views above expressed, and the action of the trial court in refusing instruction No. 4, tendered by the plaintiff, is approved.

A number of other reasons are assigned why defendant thinks a rehearing should be granted. We have considered them all, and have carefully considered the able brief filed in support thereof, but we are not disposed to modify our former opinion further than as above indicated. We think the motion for rehearing should be overruled.

CALKINS and ROOT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, our former judgment, as modified by said opinion, is adhered to, and the motion for rehearing is

OVERRULED.

LETTON, J. not sitting.