CAMPBELL BOTHELL, APPELLANT, V. J. L. MILLER, APPELLEE.

FILED NOVEMBER 16, 1910.    No. 16,181.

1. Appeal. "Parties will as a rule be restricted in this court to the theory upon which the cause was prosecuted or defended in the court of original jurisdiction." *Smith v. Spaulding*, 40 Neb. 339.

2. Bills and Notes: ACTION: BURDEN OF PROOF. In an action upon a written acceptance or bill of exchange a general denial puts in issue every material averment of the petition, and the affirmative is upon the plaintiff to prove the making and delivery of the identical instrument mentioned in the petition, and so continues to the close of the case.

3. The findings of the district court examined and set out in the opinion *held* sufficient to sustain the judgment.

4. Evidence examined and set out in the opinion *held* sufficient to sustain the findings of the district court.

APPEAL from the district court for Cheyenne county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Wright, Duffie & Wright,* for appellant.

*Williams & Williams* and *G. J. Hunt, contra.*

FAWCETT, J.

From a judgment in favor of defendant in the district court for Cheyenne county, plaintiff appeals.

Plaintiff's action is based upon the following draft: "Four months after date, pay to the order of J. M. Converse the sum of ninety six and 75-100 dollars $96.75, at 131-133 Wabash Ave. Chicago, Ill.   Value received, charge to account of J. M. Converse.   To J. L. Miller, Bridgeport, Neb.  (Stamped) Bridgeport Bank, Col. 3050. Bridgeport, Neb."  (Indorsed across the left hand end:) "Accepted.   J. L. Miller.  (customer sign here.)"   On the same day the draft is alleged to have been accepted, Converse indorsed it and sent it to his employer, the Rhode Island Manufacturing Company.   The company subsequently indorsed and delivered it to plaintiff.   The petition is in the ordinary form.   The answer contains four paragraphs, the fourth of which was stricken upon plaintiff's motion.   The three paragraphs remaining we will construe, as we think the parties upon the trial construed them, viz., as constituting a general denial and nothing more.   A jury was waived and trial had to the court.

In their brief, counsel for plaintiff say:  "The main question in this appeal is whether the court had as a matter of law any right to admit or consider and base his judgment upon evidence tending to show fraud in the execution and delivery of the bill of exchange or draft for the collection of which this action was brought."   An examination of the bill of exceptions shows that plaintiff did not, at any time during the trial, object to any of the testimony offered upon the ground that it was not within the issues.   On the contrary, the record shows that both sides went into the transaction had between Converse and the defendant at the time the alleged draft was accepted by the latter.   Plaintiff took the deposition of Converse, in which he detailed all the particulars of the sale by him to defendant of a bill of jewelry and seven watches; the manner in which the draft was drawn; defendant's objec-

tion to signing it as first drawn; his explanation to defendant of the character of the paper, etc.  Then, without any objection that the testimony offered was not within the issues, defendant testified in full as to the transactions in relation to the signing of a paper which defendant claims was simply an order, but which Converse testified was the draft in controversy.  The parties, having tried their case upon this theory, cannot be permitted to change it now.  In *Smith v. Phelan,* 40 Neb. 765, we said: "It is an established rule of this court that parties will be restricted to the theory upon which cases are prosecuted and defended in the trial court.  *Smith v. Spaulding,* 40 Neb. 339."  See, also, code, sec. 138.  But, even if plaintiff had interposed the objection that the testimony offered was not within the issues, the objection would not have been good, as this court is committed to the doctrine that in a suit of this character a general denial puts in issue every material averment of the petition, and the affirmative is upon the plaintiff to prove the making and delivery of the identical instrument mentioned in the petition, and so continues to the close of the case. *Walton Plow Co. v. Campbell,* 35 Neb. 173; *Gandy v. Estate of Bissell,* 72 Neb. 356; *Ohio Nat. Bank v. Gill Bros.,* 85 Neb. 718.

The only points remaining are: Are the findings of the court sufficient to sustain the judgment? and is the evidence sufficient to sustain the findings of the court?  In its findings the court, among other things, found: "The defendant took seven watches at the agreed prices of $96.75, to be paid in four months and upon the written provision or condition following: 'Provided purchaser does not sell enough of these watches to pay the entire bill by January 1, 1907, he may return all unsold that time in good order f. o. b. Chicago office.' * * *  If the defendant signed the bill of acceptance sued upon, it was because of some trick or deception on the part of the drawer, J. M. Converse.  The defendant did not intend to sign such bill and did not know that he had signed any

such bill until its presentment by the Bridgeport Bank for payment. * * * The court does not believe that the bill sued upon was ever knowingly or intentionally delivered by the defendant; that the evidence fails to show the intention on defendant's part necessary to constitute a complete delivery of the bill sued upon."

"It is therefore adjudged that plaintiff has failed to sustain his cause of action and this action is therefore dismissed at plaintiff's costs." We think the findings of the court are sufficient to sustain the judgment.

After detailing the conversation with Converse which led up to the signing of the alleged draft, defendant testified: "He says, 'We will just itemize them here upon the bill and put in the agreement and I will send it in.' After that was all over, he says, 'I have to straighten myself with the house if I leave these watches here because those are my samples, and I would not leave them, only, I am going to make a run into the house, and I will leave them and report this bill with them.' He says, 'I will have to have some signature to this to show that I have left them in your possession,' so he drew out of a pocket apparently a letter order book, and he started to write down the agreement between me and this house, stating that he had left such a number of watches with me, and that I was to sell each watch at such and such a price, and so on down the list, no more than an agreement between me and the house, then he asked me to sign it, and that is the extent of the signature here upon the acceptance. Q. Look at that instrument (indicating). A. That was not in that state at all. If the judge will look at this piece of paper he will see where it was pasted on. I do not deny that is my signature, I do not deny that part of it, but I do deny that I put it to any acceptance or note or anything of the kind. There was nothing said about a note, not a word. * * * Q. State to the court, what kind of an instrument, if any, was in front of you; what was the character of it, that you signed, or that you saw when your signature was written, or attached to this exhibit

'B.'  A. It was no more than an agreement between me and the house that he had left these watches. (Objected to and sustained.) Q. Describe the instrument. Describe the paper. A. I cannot describe it definitely because it has been more than two years ago, but there was nothing more than an agreement. Q. State whether or not the contract you speak of, or memorandum, was in that form. A. No, sir. Q. Was that the form of it? A. No, sir. (By the court.) You may describe in what form it was. Describe it. A. He wrote it with a pencil, just the same as he did this other sheet he left with me. He had no pen at that time. It was no more than a book like that, an ordinary order book. I did not pay any attention to it. I know it was not a bill of exchange, or anything that looked like that one, but he wrote it there on the counter, it was a blank sheet when he started to write on it, with the exception of a little heading probably. Q. Look at exhibit 'B' and state whether or not the piece of paper you are describing, you found the word there J. M. Converse, as a witness on that piece of paper. A. No, sir; it was not there. Q. Did you see it at the time you wrote your signature here on the piece of paper you are telling about, did you see those figures there like that—$96.75? A. No, sir; it was not there. Nothing written on that sheet was crossways, but it was up and down to where I signed my signature at the bottom of it. Q. Then you never signed this bill of exchange or promissory note? A. No, sir. * * * Q. The statement was made by Mr. Converse, in his deposition, that he explained to you that he could not leave the watches with you without either having the cash less the discount or the paper; that he could use this paper in the place of it, and that he must have this as his capital was limited; that he only had a small amount of capital, and was carrying this business along as a side line, and must have either the cash or the commercial paper for these watches. State whether or not there was any such conversation as that. A. No, sir; there was no such conversation had. Q. Was there any

invoice made of these watches? A. Yes, sir; in with the contract I made."

Clyde Spanogle, a banker at Minatare, Nebraska, testified that in 1906 he was in the Bridgeport Bank as assistant cashier; that in January or February, 1906, the draft in controversy was sent to his bank for collection, and that he handled the item at that time. He testified as follows: "Q. State whether or not the purported acceptance there on that bill is made in the usual form of acceptances on bills, on bills of exchange or promissory notes or commercial paper. A. No; it does not seem regular. Q. State to the court in what way it differs from the usual commercial way of acceptances, and indorsements. A. In nearly all accepted sight drafts that I have handled, the acceptance is usually across the face of the draft somewhere near the center; it usually runs diagonally; that seems to be the customary form. * * * Q. When you received that bill and examined it, was there anything about it to attract your attention—anything out of the ordinary bill of exchange or acceptance or promissory note? A. Yes, sir. Q. What was it? A. Right across the end above where accepted, it seems to have been attached or pasted to this original item—a piece of paper has been attached there, which attracted my attention to it at the time to us for collection. I called Mr. Miller's attention to that. It looked rather peculiar at the time I presented it to him for payment." On cross-examination he was asked: "You speak of a piece of paper being pasted on the top; where is that? A. Right there (indicating); that is the way it appears to me. Q. It was not pasted upon there at the time you received it? A. No."

In the face of the foregoing testimony it would have been a travesty upon justice to have permitted plaintiff to recover in this action. *Bothell v. Schweitzer*, 84 Neb. 271, was a case by this same plaintiff to recover upon an accepted bill of exchange drawn by this same man, Converse, in a transaction similar to the one under considera-

tion here; and, taking the two cases together, we are inclined to think that the method pursued by Converse in these cases is, if not his common, at least his too frequent method of doing business.    We are strongly impressed with the belief that defendant attached his name to what he was led by Converse. to believe was simply a .memorandum of their agreement which he, Converse, desired to send to his house to show what he had done with the watches; and that defendant never knowingly signed the draft in the form in which it now appears.

The judgment of the district court is right, and is

AFFIRMED.